Janet M. MYERS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 985S369.

Supreme Court of Indiana.

Aug. 3, 1987.

Jeffrey D. Galyen, New Castle, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On February 15, 1985, Defendant-Appellant Janet M. Myers was found guilty by jury of Murder. She was subsequently sentenced to fifty years (50) imprisonment. She directly appeals the conviction, raising the following issues for our review:

1. denying Defendant's request for funds for an additional psychiatrist;

2. denying Defendant's request to act as co-counsel;

3. refusing to dismiss the murder charge because an autopsy sample taken from the victim was broken;

4. admissibility of Defendant's statements;

5. admissibility of two photographs;

6. admitting evidence of abdominal injuries when the charging instrument stated "striking at and against the head and chest" as the cause of death;

7. refusing Defendant's tendered instruction 1;

8. refusing Defendant's tendered instruction 3;

9. refusing of Defendant's tendered instructions 4, 5, and 6;

10. failing to instruct the jury on voluntary and attempted voluntary manslaughter.

The facts are as follows. On October 11, 1983, police were called to a home in New Castle concerning the beating of an elderly woman. Upon arrival, they found the victim and Defendant, the victim's live-in housekeeper, lying on the living room floor. The victim, Ethel Mahoney, had been severely beaten. She died on October 17, 1983.

On October 12, 14 and 15, 1983, subsequent to Defendant waiving her rights, she gave statements to police. The statements revealed that Defendant had stolen money from Ethel Mahoney and planned her murder to cover up the crimes. Defendant killed the victim by striking her repeatedly with a hammer and fire extinguisher.

I

■ Appellant first asserts the trial court committed fundamental error by denying her request for funds to hire a private psychiatrist. Appellant claims the private psychiatrist was necessary to aid her in determining the viability of an insanity defense. Appellant was afforded a court appointed psychiatrist and psychologist because she filed a Notice of Defense of Mental Disease or Defect. When notice of an insanity defense is given, the court must appoint two or three competent disinterested psychiatrists, psychologists, or physicians, at least one of whom must be a psychiatrist, to examine the defendant and to testify at the trial. Ind.Code Ann. § 35–36–2–2 (Burns Supp.1986). The trial court clearly complied with the mandates of this law. After the two experts submitted their evaluations to the court, Appellant withdrew her Defense of Mental Disease or Defect.

Appellant contends that having the court appointed experts examine her was not a feasible alternative to a private psychiatrist because she must waive her doctor-patient privilege regarding any communications about the crime. Consequently, if she later withdrew the insanity defense, those experts could impeach her testimony or testify about any admissions she made. Appellant contends the denial of her request for funds violated her constitutional rights of equal protection, due process, effective assistance of counsel and the right to prepare a defense.

A defendant clearly does not have the right to receive funds to hire a psychiatrist of his own choosing. *Palmer v. State* (1985), Ind., 486 N.E.2d 477, 482; *Norris v.*

*State* (1979), 271 Ind. 568, 571, 394 N.E.2d 144, 147. This is so particularly when the defendant shows no prejudice resulting from the denial of additional experts for the preparation of his defense. In *Norris*, after the defendant was examined by two court appointed psychiatrists, he requested permission to retain, at the State's expense, a psychiatrist of his own choosing. This Court found the denial of a private psychiatrist at State expense did not force the defendant to withdraw his temporary insanity plea. *Norris*, 271 Ind. at 571, 394 N.E.2d at 147. We have further stated:

> It is well settled that an accused is not constitutionally entitled at public expense to any type of expert the accused desires to support his case. This matter is commended to the sound discretion of the trial court whose determination will not be overturned absent a showing of abuse of discretion. *Thomas v. State* (1984), Ind., 459 N.E.2d 373; *Craig v. State* (1983), Ind., 452 N.E.2d 921.

*Wisehart v. State* (1985), Ind., 484 N.E.2d 949, 954, *cert. denied* (1986), — U.S. —, 106 S.Ct. 2929, 91 L.Ed.2d 556.

Appellant fails to explain why a private psychiatrist was necessary to aid her in determining the viability of an insanity defense. There is neither a showing as to why the psychiatrist was needed, nor how Appellant was prejudiced by the judge's denial of her motion. We therefore find no abuse of discretion committed by the trial court in refusing her request for funds.

## II

■ Appellant next alleges she was denied a fair trial because she was not permitted to act as her own co-counsel. The scope of Appellant's requested participation as co-counsel was to be limited to addressing the jury as part of the closing argument. Appellant asserts she has a constitutional right to fully participate in her defense as co-counsel, and claims prejudice by not being permitted to so participate.

Since Appellant's request asked leave of the court to perform self-representational acts while also enjoying assistance of court appointed counsel, it was actually a request to have hybrid representation. *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 689, *cert. denied* (1985), 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. Granting or denying hybrid representation is within the trial court's discretion. *Bradberry v. State* (1977), 266 Ind. 530, 537, 364 N.E.2d 1183, 1187. This Court has refused to recognize a constitutional right to hybrid representation and a trial court may, in its discretion, deny a motion requesting creation of such a scheme. *Averhart*, 470 N.E.2d at 689; *Lock v. State* (1980), 273 Ind. 315, 319, 403 N.E.2d 1360, 1364–65. The decision of the trial court will not be overturned absent a clear showing of abuse of discretion. *Hunt v. State* (1984), Ind., 459 N.E.2d 730, 733. Here, Appellant claims prejudice by the court's ruling but neglects to support the statement from the record. Thus, we will not reverse the trial court.

## III

Appellant alleges the trial court erred in overruling her Motion to Dismiss based on the fact that a vial of blood taken from the victim at the autopsy was accidentally broken.

On Friday, December 28, 1983, Police Officer Tom Jarvis transported several items, including the vial of blood, to a court hearing for the purpose of identification. After a lab technician identified the items, Officer Jarvis was given permission to return the items to the State Police. Officer Jarvis placed the items in the trunk of his automobile until Monday, when he had an opportunity to return them to the Connorsville State Police Post. Later, a lab technician discovered that a vial containing blood had been broken. It could not be determined whether the vial had been broken by freezing the fluid in the very cold weather or whether the vial had been struck by some other object. Officer Jarvis testified he had personal knowledge that at least one other blood sample had been taken from the victim's body and any test results from that sample were probably available. There is no testimony that any of the blood samples, including this one, were ever ana-

lyzed or examined by any of the physicians or that they found it necessary to do so. There was testimony from medical experts that some testing could likely be done on the residue of the blood soaked into the paper sack which contained the vial of blood and other items.

Appellant claims the murder charge against her should have been dismissed because the State negligently destroyed the blood sample. She asserts the blood sample was material evidence because there was conflicting testimony as to the cause of death. The doctor who performed the autopsy testified that the victim had been severely beaten about the head and chest, that she showed evidence of a brain concussion, and that the cause of death was the bruising of her heart caused by the beating. The evidence was that the victim had been killed by Appellant who had beaten her with a hammer and a fire extinguisher. Appellant claims the blood sample was material in that the autopsy showed the victim suffered from other conditions, most notably, a gangrenous colon which could be considered a fatal condition. However, there is no evidence from any of the medical witnesses that death was, in fact, caused by any factor other than the bruised heart resulting from the beating. Neither is there shown an expression by the expert medical witnesses that any of the blood samples were used to determine the cause of death nor, more importantly, that it was necessary to make such a determination. A pathologist called as an expert witness testified that were he to perform an autopsy on a person in the condition of the victim here, he might take blood samples to store for a possible future use but would see no significance in testing the blood samples to determine cause of death.

█ It is true the negligent destruction or withholding of material evidence by the police or the prosecution may present grounds for reversal. *Turpin v. State* (1980), 272 Ind. 629, 631, 400 N.E.2d 1119, 1121; *Birkla v. State* (1975), 263 Ind. 37, 42–43, 323 N.E.2d 645, 648, *cert. denied*, 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77. The defendant must establish materiality as a condition precedent to claiming a denial of due process where evidence is negligently lost or withheld by the government, except where the materiality is self-evident or a showing of materiality is prevented by the destruction of the evidence. *Turpin*, 272 Ind. at 632, 400 N.E.2d at 1121; *Hale v. State* (1967), 248 Ind. 630, 634–36, 230 N.E.2d 432, 435. There is no showing here that any attempt was made to examine any of the blood samples to determine what, if anything, they might show. Furthermore, the evidence clearly established the proximate cause of death was the bruising of Ethel Mahoney's heart, which was a direct result of the beating she received from Appellant. Accordingly, no reversible error is presented on this issue.

## IV

Appellant next challenges the admissibility of her statements. Appellant contends neither the October 14 nor the October 15 statement was voluntary, as the advice of rights prior to each statement was incomplete. Further, Appellant maintains the taint of the involuntary October 14 statement was not purged prior to the taking of the October 15 statement. She also complains the October 15 statement was taken while she was being illegally detained because she was not presented to a magistrate within the statutory time period.

█ In reviewing admissibility of incriminating statements, we examine only the evidence and reasonable inferences therefrom which are favorable to the trial court's ruling, together with any uncontradictory adverse evidence. If substantial evidence supports the trial court's ruling, it will not be disturbed. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128, 1130. Admissibility is determined by whether, based on the totality of the circumstances, the statement was made voluntarily. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort. *Id.* At trial, the State has the burden of showing beyond a reasonable

doubt that the defendant voluntarily and intelligently waived his rights. *Id.*

The evidence reveals on October 14, 1983, Officer James Stephens transported Appellant to the New Castle Police Station. Appellant was presented with a waiver of rights form which she signed. Appellant was then questioned. Later, Appellant was given an oral advice of rights. She then gave a taped statement in which she admitted to beating Ethel Mahoney. Appellant was not taken before an impartial magistrate and was not provided counsel. The next day, after being given an oral advisement rights, Appellant made another incriminating statement.

■ Appellant does not deny she was advised of her rights prior to giving each statement. She claims the advisements were incomplete and therefore did not comply with *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; and *Edwards v. State* (1980), 274 Ind. 387, 412 N.E.2d 223. *Miranda,* followed by *Edwards,* indicated the proper advice to give to one about to be interrogated is that that person has a right to remain silent and that anything said "can and will be used against you in court." In the advisements given by police to Appellant here, the word "will" was left out and the advice given was "anything you say *can* be used against you in court." In all other respects the advisements given complied with *Miranda* and *Edwards.* Appellant acknowledged she understood them and was willing to waive them. She then gave her statements. Under the facts and circumstances here we do not see the omission of the word "will" to be such a fatal variance as to require suppression of the statements. The trial judge was justified in finding that Appellant was fully and adequately advised of her rights, understood them, and waived them.

■ Appellant further complains that prior to the giving of her taped statements, there was a period of interrogation by the police that was not taped nor preserved in any manner. We see no merit to Appellant's contention that the failure to preserve all of this interrogation renders her taped statements inadmissible. Her claim that the taping may have revealed exculpatory information is not persuasive considering that she was a party to the discussions but makes no reference to any statement by herself or the police officers that puts in question the truth or credibility of the taped statements admitted into evidence. Police indicated they spoke with Appellant, after advising her of her rights, and determined that Appellant was willing to give a full statement of her actions in the perpetration of this homicide. They then taped her statement in which she recounted the details of the incident. The police witnesses testified this was normal procedure always followed by them. Appellant gives us no reason to find she was prejudiced by this procedure. The State carried its burden by showing Appellant signed waivers indicating her willingness to make the statements, and indicating she did not wish to have an attorney present.

■ Failing to present Appellant to an impartial magistrate does not necessarily render the statements inadmissible. This is merely one factor to be considered by the trial judge in determining the issue of voluntariness. *Taylor v. State* (1980), 273 Ind. 558, 564, 406 N.E.2d 247, 251–52. The question of illegal detention must be resolved by the trial court by examining the totality of the circumstances. *Holleman v. State* (1980), 272 Ind. 534, 538, 400 N.E.2d 123, 127. The record shows that Appellant gave her first statement at 11:25 a.m. on Friday, October 14. She then requested and was allowed to spend several hours with her boyfriend at the police station. She was later transported to the jail and taken through the booking procedure. The next morning, October 15, she made her second statement. On Monday, October 17, Appellant was taken before a magistrate. Appellant does not claim that the failure to bring her before a magistrate during the weekend resulted in her being subjected to duress from which incriminating evidence was obtained from her. It does not appear that the failure to present Appellant to a magistrate had any influence on her decision to make the second statement. She shows us no prejudice re-

sulting from the detainment except to say that under the circumstances seventy hours was too long. In view of the circumstances here, no error is presented. *Music v. State* (1986), Ind., 489 N.E.2d 949, 951; *James v. State* (1972), 258 Ind. 392, 396–97, 281 N.E.2d 469, 471–72. Thus, the evidence supports the trial court's determination that Appellant's statements were voluntary.

## V

Appellant next challenges the admissibility of two photographs of Ethel Mahoney's head injuries. Appellant contends that the photographs are irrelevant since Mrs. Mahoney's head had been shaved between the time of the injury and the taking of the photographs. Appellant further argues the photographs were merely cumulative since there was detailed testimony regarding Ethel Mahoney's head injuries. Adding to these complaints the gruesomeness of the photographs, Appellant argues that the photographs should be excluded from evidence because any probative value is substantially outweighed by the prejudicial impact and needless presentation of cumulative evidence. Therefore, Appellant claims the inflammatory content of the photographs prejudiced the jury against her.

██ To be admissible, a photograph must be a true and accurate representation of what it purports to depict. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 295, *cert. denied* (1987), —— U.S. ——, 107 S.Ct. 910, 93 L.Ed.2d 860. A witness familiar with what is depicted must establish that it is a true and accurate representation. *Id.* The admissibility of a photograph is dependent on its relevancy. *Swanigan v. State* (1986), Ind., 499 N.E.2d 732, 735. If the photograph serves as an aid to orient the jury and help them understand the evidence, it is relevant. *Id.* Relevance is further determined by whether a witness would be permitted to describe what the photograph depicts. *Boyd,* 494 N.E.2d at 295. That photographs depict gory, revolting, or inflammatory details of the crime is not a sufficient basis for excluding them from evidence. *Boyd,* 494 N.E.2d at 296.

The trial court has considerable discretion in the decision to admit photographic evidence, and reversal will occur only on a showing of abuse of that discretion. *Swanigan,* 499 N.E.2d at 735; *Boyd,* 494 N.E.2d at 296.

██ The exhibits showed the injuries to Ethel Mahoney's head. They were taken in the hospital emergency room. The emergency room doctor testified that the photographs were a fair and accurate representation and that it was standard procedure for the nurses to shave the patient's head before the wounds were treated. Thus, the photographs were aids to the jury in determining the issues before it, and were not calculated to unreasonably inflame or impassion the jury. There is no showing that the trial court abused its discretion in their admission.

## VI

Appellant next challenges the admissibility of evidence of abdominal wounds. The information charged that Janet M. Myers did "knowingly kill Ethel Mahoney by striking at and against the head and chest of Ethel Mahoney, thereby causing her death...." Appellant contends the State should have been limited to evidence of head and chest injuries in proving the cause of death. Appellant argues she was denied her right to be informed of the nature of the charges against her so that she could anticipate the proof and prepare a defense in advance of trial. Appellant claims prejudice in that the jury could have linked death caused by abdominal injuries to her without her being informed of such evidence in the charging information.

We first note this testimony did not infer death was caused by the abdominal injuries. Second, these injuries were admissible as facts that tended to complete the story of the incident and were relevant to show the nature of the beating.

The purpose of an information is to advise the defendant of the particular crime charged so that she can prepare a defense. *McGee v. State* (1986), Ind., 495 N.E.2d 537, 538. The accused must be sufficiently apprised of the nature of the charges against

her so she may anticipate the proof and prepare a defense in advance of trial. *Smith v. State* (1984), Ind., 465 N.E.2d 702, 704. Consistency between the allegations charged and the proof adduced is required out of deference for the accused's constitutional right to be informed of the nature and cause of the accusation in sufficient detail to enable her to prepare her defense, to protect her in the event of double jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment. *Manna v. State* (1982), Ind., 440 N.E.2d 473, 475.

Where the means of committing a homicide are expressed in the charging instrument, the State must prove that death occurred through those means. *Montes v. State* (1975), 263 Ind. 390, 404, 332 N.E.2d 786, 795. However, to constitute reversible error, we require a showing that the variance between the charging information and the proof offered at trial actually misled the defendant in the preparation of her defense. *Carmon v. State* (1976), 265 Ind. 1, 3, 349 N.E.2d 167, 169. Absence of detail in an information is fatal only if the phraseology misleads the defendant or fails to give him notice of the charges against him. *McGee*, 495 N.E.2d at 538. Minor variances from the wording of a statute do not make an information defective so long as the words, construed according to their common usage, do not mislead the accused or do not omit an essential element of the crime. *Smith*, 465 N.E.2d at 704.

The instant information gave notice to Appellant of the charges against her: knowingly killing Ethel Mahoney by striking at and against the head and chest, thereby causing her death. This was sufficient to advise Appellant such that she could prepare a defense. Appellant does not show that she was misled in the preparation of her case or prejudiced by the phraseology employed. Nor does the wording omit an essential element of the crime. Appellant was aware of the abdominal injuries evidence as it was presented at the bond hearing. We find the language in the information was sufficient to charge Appellant with murder and satisfied the requirement that Appellant be informed of the nature of the charge against her.

## VII

Appellant next alleges the trial court erred in refusing Defendant's tendered instruction 1, which reads:

Under the law of this State the burden is upon the prosecution in a murder prosecution to prove beyond a reasonable doubt that the alleged conduct engaged in was the direct and efficient cause of death. *Powell v. State* (1982), Ind., 437 N.E.2d 969.

The trial court rejected this instruction as an improper statement of law. The substance of the instruction was more correctly stated and already covered in given instruction 10, which reads:

An individual who unlawfully inflicts injuries upon another is responsible for the death of that person if the injuries are the cause of death, or are a contributing cause. It is not necessary that the injuries be the direct cause of death if the injuries cause or contribute directly or indirectly to the death of that person through a chain of natural causes and effects unchanged by human action. The fact that other causes also contribute to the death does not relieve the actor of responsibility.

In reviewing whether an instruction was properly refused, this Court considers whether the instruction is a correct statement of law, whether there is evidence to support the giving of the instruction and whether the substance of the instruction is covered by other instructions given by the court. *McKean v. State* (1986), Ind., 500 N.E.2d 1184, 1186. The giving of jury instructions is within the trial court's discretion. *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056, 1059. The trial court will be reversed only for an abuse of discretion. *Collier v. State* (1984), Ind., 470 N.E.2d 1340, 1343. Any error in an instruction will not warrant a reversal unless the error is of such a nature that the entire charge of which it is a part misled the jury on the

law of the case. *Grossenbacher*, 468 N.E.2d at 1059.

 One who inflicts an injury on another is deemed by the law to be guilty of homicide, if the injury contributes mediately or immediately to the death of such other. The fact that other causes contribute to the death does not relieve the actor from responsibility. *Bales v. State* (1981), 275 Ind. 515, 518, 418 N.E.2d 215, 217; *Hicks v. State* (1937), 213 Ind. 277, 295, 11 N.E.2d 171, 179, *cert. denied*, 304 U.S. 564, 58 S.Ct. 951, 82 L.Ed.2d 1531; *Stephenson v. State* (1932), 205 Ind. 141, 191–92, 179 N.E. 633, 650, *petition dismissed*, 205 Ind. 141, 186 N.E. 293. This Court has held:

> The general rule, both of law and reason, is, that whenever a man contributes to a particular result, brought about, either by sole volition of another, or by such volition added to his own, he is to be held responsible for the result, the same as if his own unaided hand had produced it. The contribution, however, must be of such magnitude and so near the result that sustaining to it the relation of cause and effect, the law takes it within its cognizance. Now, these propositions conduct us to the doctrine, that whenever a blow is inflicted under circumstances to render the party inflicting it criminally responsible, if death follows, he will be holden for murder or manslaughter, though the person beaten would have died from other causes, or would not have died from this one, had not others operated with it; provided, that the blow really contributed mediately or immediately to the death as it actually took place in a degree sufficient for the law's notice.

*Stephenson*, 205 Ind. at 191–92, 179 N.E. at 650. The Court's given instruction requires that the injuries contribute directly or indirectly to the death. Thus, the trial court did not abuse its discretion in refusing the tendered instruction in favor of given instruction 10.

## VIII

 Appellant alleges the trial court erred in refusing Defendant's tendered instruction 3, which reads:

> I charge you that for the State to prove its case beyond a reasonable doubt, the evidence must be to such a certainty as would justify the mind to action, not only in matters of importance, but in those of the highest import, involving the dearest interests. Nothing short of this can serve as an example of that moral certainty which should authorize a verdict of guilty. *Bradley v. State* (1869), 31 Ind. 492, 505.

The State asserts the substance of the instruction was more correctly stated and already covered in given instruction 9, which reads:

> To prove a proposition beyond a reasonable doubt, the evidence must be such that it would convince a prudent man of the truth of it, to such a degree that he would feel safe to act upon such conviction without hesitation, in matters of the highest importance to his own dearest personal interests, under circumstances where there was no compulsion upon him to act at all.

Appellant contends her instruction, taken directly from *Bradley*, is a more accurate instruction as to what constitutes reasonable doubt. However, the mere fact that certain language is used in an opinion of this Court does not make it proper language for jury instructions. *Jacks v. State* (1979), 271 Ind. 611, 623, 394 N.E.2d 166, 174. Reasonable doubt was adequately covered by the Court's instruction. Thus, the trial court did not err.

## IX

 Appellant alleges the trial court erred in rejecting tendered instructions 4, 5, and 6. The trial court rejected these instructions because the contents were adequately covered by the Court's final instructions. Appellant complains the jury was not fully advised of how reasonable doubts as to the law should be resolved. She also claims that although lesser included offenses were available, the jury was not fully instructed as to the law or how to deal with doubt as to which offense Appellant should be convicted. Finally, Appel-

lant claims the jury was not fully advised as to how to treat conflicting inferences.

On review we look to the Court's given instructions to determine if they covered these issues. The record shows that given instruction 9 adequately informs the jury about reasonable doubt. Given instruction 17 instructs the jury on the lesser offenses available and further sets out how to deal with doubt as to which offense applied to Appellant. Given instruction 11 advises the jury on weighing conflicting testimony. The record clearly shows the given instructions adequately cover the issues presented by Appellant. Thus, no reversible error has been presented.

## X

■ Appellant alleges the trial court erred in failing to instruct the jury on voluntary manslaughter and attempted voluntary manslaughter. Appellant argues instructions on the lesser included offenses were appropriate because sudden heat is not an element of voluntary manslaughter.

Determining the propriety of an instruction on a lesser included offense requires first, a determination of whether a conviction on the greater charge necessitates proof of all essential elements of the lesser, and second, a determination of whether the evidence presented at trial warrants the jury's finding that the lesser offense was committed while the greater was not. *Newman v. State* (1985), Ind., 485 N.E.2d 58, 61; *Kelley v. State* (1984), Ind., 470 N.E.2d 1322, 1326. Appellant passes the first hurdle but fails the second. In a murder trial, a defendant is not entitled to an instruction on the lesser included offense of voluntary manslaughter where the jury could not have found from the evidence that the killing was committed in sudden heat. *Kelley*, 470 N.E.2d at 1326.

Here, the evidence clearly established that Appellant intended to murder Ethel Mahoney. Appellant's own statements revealed that she had stolen money from the victim and had planned the murder to cover her other crimes. The trial judge did not err in refusing to instruct the jury on the lesser included offenses because the evi-dence did not warrant giving the instructions.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.