Deborah JONES, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–8803–CR–361.

Supreme Court of Indiana.

April 5, 1989.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Deborah Jones was found guilty by a jury in Marion County Superior Court Criminal Division 6 of two counts of Attempted Murder, a Class A felony, and one count of Carrying a Handgun Without a License, a Class A misdemeanor. The trial court sentenced her to a term of twenty (20) years on each of the attempted murder charges and one (1) year on the handgun violation, all sentences to be served concurrently. Jones raises two issues for our consideration in this direct appeal as follows:

1. sufficiency of the evidence; and
2. improper admission of photographic evidence.

The evidence tended to disclose that on the evening of December 2, 1986, Jones

came to the home of her mother and step-father at 6813 Westfield Boulevard in Indianapolis, Marion County, Indiana. The purpose of her visit was to see her infant son who was being cared for by her mother, Bessie Pumel. Jones had lived in her mother's home on previous occasions but did not reside there at the time of this visit. Bessie let Jones in the house and then went to the playpen to talk to the baby. Bessie picked up the baby to change its diaper while Jones was sitting on the couch. As Bessie stood up, holding the child, Jones walked up behind her and Bessie suddenly felt a hot explosion in her back. She fell forward with the baby still in her arms. Jones then stood over Bessie and pointed the gun at her head. Bessie put her hands over her head for protection and next felt a hot explosion in her hand. Bessie testified she felt and heard the bullet enter her head and also heard one other shot fired. Meanwhile, Bessie's husband, Virgil Pumel, was downstairs with his son Charles when they heard the gunshots. They ran upstairs through the kitchen and into the living room. Virgil observed Jones standing over Bessie with the gun pointed at her. He said Jones was laughing hysterically. He observed wounds on Bessie that were consistent with gunshot wounds. He ran toward Jones and she shot at him but missed. Virgil then dived and tackled Jones. She struck him in the face with the gun, cutting his eye and nose, but he finally knocked the gun out of her hand and got her out of the house. He locked the door and called the police and an ambulance. Jones was later arrested while in her car and the car was towed away. While making an inventory search of the automobile, the police found a shotgun with gun case in the trunk, live twenty-two caliber cartridges in clothing and boxes, spent twenty-two caliber casings in paper bags, a holster behind the driver's seat, and National Rifle Association targets in the back. These items were photographed by the police.

## I

Jones' only claim of insufficiency is that the State did not prove beyond a reasonable doubt she had the requisite intent for the attempted murder of either her mother or step-father.

The requisite intent for attempted murder may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Johnson v. State* (1983), Ind., 455 N.E.2d 932, 936. In considering a challenge to sufficiency, we neither reweigh the evidence nor judge the credibility of witnesses. This court examines only the circumstantial and direct evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion the defendant is guilty beyond a reasonable doubt, the verdict will not be set aside. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 855. It is, of course, the jury's task to weigh the evidence and determine the credibility of the witnesses. *Kappos v. State* (1984), Ind., 465 N.E.2d 1092, 1096.

To support her claim the State did not prove beyond a reasonable doubt she intentionally committed the crimes of attempted murder, Jones claims the evidence showed she was emotionally deficient and not capable of forming the requisite specific intent. Although the issue of Jones' mental competency during the commission of these crimes was raised at trial, Jones asserted she was not insane. Two psychiatrists who were appointed by the court to examine Jones found she was of sound mind when she committed these acts. Jones did not wish to proceed on an insanity defense, and even claimed she was not mentally ill. Instead, Jones raised the defense she did not commit these offenses. She further submits her mother and step-father's testimony contradicted that of the psychiatrists. Her mother testified she did not believe her daughter really meant to harm her and her step-father testified Jones was in an hysterical state when he saw her standing over her mother with the gun in her hand. Even if these accounts conflicted with the findings of the psychiatrist as to her mental condition at the time of commission, it presented a conflict that

was in the province of the trier of fact to decide. There was ample evidence presented to justify the jury's finding Jones had the requisite intent to commit the crimes of attempted murder beyond a reasonable doubt.

Jones claims there was not sufficient evidence to sustain her conviction for carrying a firearm without a license since a provision in the code defining this crime makes an exception for a person carrying a weapon in his own dwelling. She claimed her mother's home was her dwelling since she had never completely moved out of it. Some personal items, including clothing, still remained in her mother's home and she visited there from time to time. However, during her testimony, Jones herself admitted she did not live in her mother's home and the evidence most favorable to the verdict indicated she did not. Virgil Pumel testified he owned no handgun and there was none on the premises. Shells and an empty holster for a handgun were in Jones' car when she was arrested. There was no showing Jones had a permit to carry a handgun. Her claim of insufficiency on this count fails.

## II

Jones claims the trial court erred by overruling her objection to the admission of several State's exhibits which were photographs of the crime scene and photographs of the interior of Jones' automobile. She claims the State did not lay a proper foundation for the admission of any of these exhibits and further claims the exhibits were not relevant or material to the issues of guilt or innocence and their probative value outweighed the prejudicial effect to her defense.

The photographic exhibits were sponsored by witness John Brooks who had taken them. He was employed with the Indianapolis, Marion County Forensic Services Agency. Photographs of the crime scene included items in the home, depressions in the wall which appeared to have been made by bullets, red spots on a counter top, a handgun, twenty-two caliber bullets and twenty-two caliber spent cartridges.

Brooks testified that the scene depicted in all of the exhibits accurately represented the scene as it appeared immediately after the commission of this crime. Defense counsel objected to the photographs of the depressions in the wall, claiming this officer did not know what was contained in the walls, that is, whether or not it was a bullet. Counsel further objected the evidence did not show the substances on the counter were, in fact, bloodstains, and that Brooks was not able to state the pistol was the one used. Jones further objected that Brooks was not qualified to testify as an expert in any of these matters and therefore the photographs were not admissible. The court properly overruled these objections. The photographs represented items of evidence to be considered with other evidence in the case and would not necessarily be expected to prove the depressions in the walls were made by bullets, the spots on the counter were blood, or the handgun was the one actually used to shoot the victims. Proof of these facts required the testimony of other witnesses and, in fact, other witnesses did testify to all of these facts during the trial. The purpose of the photographs was to show the crime scene to aid the jury in hearing testimony and relating what they saw in the photos to the descriptions by other witnesses of the scene and the things that occurred there.

Generally a photograph is relevant and admissible if it depicts an object or scene which a witness would be permitted to describe through testimony. Admission of photographs is within the sound discretion of the trial court and will not be disturbed unless it is apparent the trial court abused its discretion. *Brown v. State* (1987), Ind., 503 N.E.2d 405, 409. A proper foundation is laid for the admission of a photograph if a witness familiar with what is depicted testifies the photograph is a true and accurate representation of the things it intends to portray. *Cheney v. State* (1985), Ind., 486 N.E.2d 508, 511. Witness Brooks laid a proper foundation here. The photograph must also be relevant, that is, what is depicted in the scene must be probative in

determining the facts necessary to arrive at a verdict of guilt or innocence, and further serve as an aid to orient the jury and help them understand the evidence on that subject. *Myers v. State* (1987), Ind., 510 N.E.2d 1360, 1366.

Jones claims the trial court improperly admitted the photographs of the interior of her automobile which showed a handgun holster, other weapons and ammunition. Jones claimed the police should have obtained a warrant before searching her vehicle and therefore these items should have been suppressed. The evidence showed, however, Jones was arrested in her automobile, the vehicle was subsequently towed and inventory searched. The defense conceded there are exceptions to the warrant requirement and one of those exceptions is an inventory search. *Deneal v. State* (1984), Ind., 468 N.E.2d 1029, 1031. Searches of impounded automobiles are directed at security as well as protecting the automobile and its contents. *United States v. Griffin* (7th Cir.1984), 729 F.2d 475, 484, *cert. denied* (1984), 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60. When police arrest an individual in an automobile and impound the vehicle, it is proper for them to make an inventory search of that vehicle not only for their own protection but for the protection and security of the owner of the automobile. The police testified this was done in this case in the prescribed manner. The admission of evidence, even if cumulative, is within the discretion of the trial court. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, 1225, *cert. denied* (1986), 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900. Evidence is relevant if, in light of general experience, it logically tends to prove or disprove some issue of fact. *Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 505. Even if evidence is only marginally relevant or probative, it is admissible if it tends to prove some fact. It is within the sound discretion of the trial judge to determine its admissibility. *Simmons v. State* (1987), Ind., 504 N.E.2d 575, 581; *Jenkins v. State* (1985), Ind., 485 N.E.2d 625, 626. It was within the discretion of the trial judge in this case to determine whether the desired inferences of intent to murder and carrying a handgun

without a license were more probable than they would be without the photographs of the interior of the automobile. We find no abuse of discretion in the trial court's ruling on the photographs of the crime scene and the interior of Jones' automobile at the time of her arrest meriting reversal.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.