Christopher **PETERSON**,
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9403–CR–108.

Court of Appeals of Indiana.

July 19, 1995.

Transfer Denied Sept. 20, 1995.

Marce Gonzalez, Jr., Appellate Public Defender, Lake Superior Court, Merrillville, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

STATON, Judge.

A jury convicted Christopher Dwayne Peterson ("Peterson") of attempted murder, a class A felony,[1] and robbery, a class B felony.[2] Peterson presents two (restated) issues for appellate review:

I. Whether Peterson's trial violated the double jeopardy provisions of the state and federal constitutions.

II. Whether the trial court erred in admitting evidence of Peterson's confession.

We affirm.

The facts most favorable to the verdict reveal that on January 28, 1991, Peterson robbed the victim, Ronald Nitsch, as Nitsch attempted to make a bank deposit. During the course of the robbery, Peterson shot Nitsch in the head, severely injuring him. Peterson was arrested and charged with the crimes; he confessed while in police detention.

The first trial of this action commenced on March 8, 1992, at which time Peterson was represented by attorney Charles Graddick. After the jury was selected and sworn, the State informed the trial court that Graddick had a conflict of interest because a member of Graddick's firm had interviewed another individual involved in the same crime. Thereafter, Graddick withdrew and the trial court granted Peterson's motion for a mistrial. After a second jury was impaneled and sworn, Peterson was convicted of attempted murder and robbery. This appeal ensued.

## I.

### Double Jeopardy

Peterson challenges his conviction as violative of double jeopardy. Specifically, Peterson argues that because a mistrial was ordered without his consent after the first jury was selected and sworn, double jeopardy attached and bars any subsequent trial.

Both the United States and Indiana constitutions prohibit the state from placing a criminal defendant in jeopardy twice for the same offense. *Ried v. State* (1993), Ind. App., 610 N.E.2d 275, 278, *affirmed*, Ind., 615 N.E.2d 893. When considering double jeopardy protection in the context of a mistrial order, we will reverse only upon a showing of abuse of discretion, with manifest necessity for the jury's discharge as the underlying test. *Id.* at 279 (citing *Phillippe v. State* (1986), Ind.App., 458 N.E.2d 1159, 1161, *trans. denied*). A specific finding of manifest necessity is not required if the record provides sufficient justification for the court's mistrial order. *Id.*

In this case, defense counsel Charles Graddick requested to withdraw from repre-

1. IND.CODE § 35-41-5-1 (1993); IND.CODE § 35-42-1-1 (1993).

2. IND.CODE § 35-42-5-1 (1993).

senting Peterson due to a conflict of interest and moved for a mistrial. The alleged conflict involved the former representation of a codefendant by an associate of Graddick's firm. The record indicates that Graddick's associate interviewed and appeared as co-counsel on behalf of former codefendant Antwion McGee, who was a witness for the State in Peterson's trial. Graddick was not aware of his associate's involvement with McGee's case until Deputy Prosecutor Ralph Staples brought it to his attention. .

Peterson argues that the prior representation of McGee by Graddick's associate did not create an actual conflict of interest. As a result, Graddick's withdrawal was unnecessary and the granting of the mistrial was not compelled by manifest necessity. We disagree. The record indicates that Graddick's associate took a statement from McGee and entered an appearance on McGee's behalf that had not been withdrawn at the time of Peterson's trial. In light of this information, Graddick moved to withdraw because he believed that representing Peterson created a conflict, or at the very least the appearance of impropriety. The trial court granted Graddick's motion.[3] The court could not proceed to trial when Peterson was unrepresented; to do so would have been error. *See Crim v. State* (1973), 156 Ind.App. 66, 74, 294 N.E.2d 822, 827. From these circumstances the trial court could reasonably conclude that manifest necessity warranted a mistrial.

■ Peterson further argues that manifest necessity does not bar his double jeopardy claim because his mistrial motion was brought about by prosecutorial bad faith. The record indicates that Deputy Prosecutor Staples informed the trial court and Graddick that a potential conflict existed. Peterson argues that Staples was not actually concerned about the conflict, but rather that he informed the court thereof because he was unhappy with the jury that had been selected. Peterson presents no evidence to support his bald allegation that Staples was unhappy with the selected jurors. Instead, the record indicates that Staples discovered the conflict while interviewing McGee on the day the jury was selected, and that he brought the conflict to the court's attention immediately thereafter. This evidence is insufficient to indicate prosecutorial bad faith.[4] We find no error here.

## II.

### *Admissibility of Confession*

■ Prior to trial, Peterson filed motions to suppress various evidence, including his confession. After a full hearing, the trial court ordered suppression of the prints taken when Peterson was arrested, but allowed admission of certain statements he gave while in police custody. Peterson challenges only the admissibility of his confession. The admissibility of evidence is within the sound discretion of the trial court and we review only for abuse of that discretion. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068, 1073, *reh. denied.*

3. Peterson cites no authority supporting his position that the trial court had an affirmative duty to determine whether a conflict existed under the Rules of Professional Conduct before permitting Graddick to withdraw. In fact, the plain language of the applicable rule leaves this determination to the affected attorney:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
   (1) the lawyer reasonably believes the representation will not be adversely affected; and
   (2) The client consents after consultation.

＊　　＊　　＊　　＊　　＊　　＊

Ind. Professional Conduct Rule 1.7(b). This rule indicates that consultation with the client is not required if the lawyer reasonably believes a con-

flict exists. In this case, Graddick reasonably believed that his firm's representation of both Peterson and McGee created a conflict that could adversely affect Peterson, and stated as much in his motion to withdraw. It was within the trial court's discretion to believe Graddick and grant his withdrawal motion; the rules do not require the trial court to independently determine the existence of a conflict.

4. According to Peterson, bad faith is also indicated because in earlier proceedings, the State requested Graddick's removal on the grounds that Graddick's position as city court judge caused a conflict. The trial court denied the State's motion. The State's first motion was wholly unrelated to the conflict giving rise to Graddick's withdrawal, and did not prejudice Peterson. We will not presume prosecutorial bad faith from the mere filing of a previous unrelated motion.

The record indicates that after Peterson was arrested without a warrant he confessed. Shortly thereafter, he was brought before a magistrate judge; approximately 36 hours passed between his arrest and the court's probable cause determination. Peterson contends that his 36 hour detention prior to a probable cause hearing renders his confession inadmissible as "fruit of the poisonous tree"; that is, as a result of his unreasonably lengthy detention without probable cause.

▮ The United States Supreme Court has determined that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pre-trial detention following a warrantless arrest. *Gerstein v. Pugh* (1975), 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54. The Court has since held that a determination of probable cause within 48 hours of arrest is presumptively reasonable. *County of Riverside v. McLaughlin* (1991), 500 U.S. 44, 56, 111 S.Ct. 1661, 1669, 114 L.Ed.2d 49. The defendant may rebut this presumption with proof of unreasonable delay:

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Id.*

▮ Peterson argues that although his probable cause hearing was held within the presumptively reasonable time established by *County of Riverside*, the delay was in fact unreasonable because it was necessitated by the State's need to gather additional evidence of probable cause.[5] According to Peterson, because the courthouse and jail facilities are in close proximity and transfer time was minimal, the need for time to find additional evidence is the only explanation for the State's failure to hold the probable cause hearing sooner. We disagree.

The record reveals that at the time of Peterson's arrest, the State had already gathered substantial evidence that Peterson was involved in the crimes at issue. Officer Raymond Borchert identified Peterson as the person he pulled over in the victim's car, which had been taken from the scene. Borchert further identified Peterson as the person who ran from the scene to avoid police custody. Police had already taken a statement from Antwion McGee identifying Peterson as a participant in the crimes. This evidence lends little credence to the claim that the State needed a delay to gather evidence of probable cause prior to Peterson's initial hearing, as would be necessary to circumvent the presumptively reasonable 48 hour detention period.

Peterson has failed to rebut the presumption that the length of his pre-hearing detention was reasonable. *County of Riverside, supra.* Accordingly, we find no error in the trial court's admission of his confession.

Affirmed.

GARRARD and SULLIVAN, JJ., concur.

---

5. Even should we determine that Peterson's probable cause hearing was unreasonably delayed, this delay would be only one factor in determining the voluntariness of Peterson's confession. *Myers v. State* (1987), Ind., 510 N.E.2d 1360, 1365. The effect of an unlawful detention must be resolved by considering the totality of the circumstances before the trial court. *Id.*

Peterson presents no evidence indicating that he was coerced into confessing during the detention period, nor does he present evidence indicating that his detention influenced his decision to confess. Because Peterson has failed to demonstrate prejudice from his detention, the trial court's admission of his resulting confession was within its discretion. *See id.*