

FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leonard Blackmon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 22, 2015

Court of Appeals Case No.
71A03-1411-CR-413

Appeal from the St. Joseph Superior
Court.
The Honorable Jane Woodward
Miller, Special Judge
Cause No. 71D01-1407-F5-9

**Baker, Judge.**

[1] Leonard Blackmon appeals his conviction for Intimidation,[1] a Level 5 felony. Finding that the evidence was insufficient to prove that Blackmon acted with the intent that Donald Courtway be placed in fear of retaliation for a prior lawful act, as required by the intimidation statute, we reverse.

## Facts

[2] On July 23, 2014, Donald Courtway was at his daughter Megan's house watching her children. At some point in the afternoon, he noticed the sound of running water and went to see where it was coming from. Courtway eventually discovered that water was running from a spigot on the outside of the house. He went outside and found a bucket underneath the spigot. The spigot had been locked, but the locking device had been broken off.

[3] Courtway knew that Megan's neighbor, Winifred Hale, did not have running water and had been borrowing water from neighbors. He picked up the bucket, dumped out the water, and walked on to Hale's driveway. Courtway noticed music coming from Hale's garage and yelled "hey" to try to get someone's attention. Hale and Blackmon exited the garage and walked up the driveway to meet Courtway. Hale and Blackmon eventually moved to a position about fifteen feet away from Courtway.

[4] Courtway threw the bucket towards Hale's house and asked, in an elevated voice, who had broken off the lock to the spigot. He then asked who had given

---

[1] Ind. Code § 35-45-2-1.

them permission to use the water. Hale told Courtway that she would pay for the water. Courtway declined this offer and told her that he was going to call the police.

[5] Blackmon, who had been silent up to this point, pulled out an open pocket knife and held it above himself. Courtway then placed his hand on his pocket and said "I hope you enjoy your last day on earth" in an effort to make it appear as though he was armed. Tr. p. 33-34. Blackmon said "oh, you gonna shoot me?" Tr. p. 34. Blackmon then put the pocket knife down, offered a few parting expletives, and returned to the garage. Courtway went back to his daughter's house and called the police.

[6] The police arrested Blackmon later that evening. When questioned by an officer, Blackmon admitted to stealing water. He was charged with Level 5 felony intimidation and class A misdemeanor possession of paraphernalia.[2] On October 21, 2014, a jury found Blackmon guilty as charged. The trial court sentenced Blackmon to four years for intimidation and one year for possession of paraphernalia, to be served concurrently. Blackmon now appeals.

---

[2] Blackmon does not appeal his conviction for possession of paraphernalia.

# Discussion and Decision

## I. Standard of Review

On appeal, Blackmon contends that the evidence is insufficient to support his conviction.[3] When reviewing a claim for insufficient evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997). We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom. *Id.* If substantial evidence of probative value supports the trier of fact's conclusion, we will affirm. *Id.*

Indiana's intimidation statute provides:

> (a)  A person who communicates a threat to another person, with the intent:
>
>> (1)  that the other person engage in conduct against the other person's will; [or]
>>
>> (2)  that the other person be placed in fear of retaliation for a prior lawful act; . . .
>
> ***
>
> commits intimidation, a Class A misdemeanor.

---

[3] Blackmon also argues that the trial court erred in denying his motion for a directed verdict. Because his argument in this regard is the same as his sufficiency argument, and our standard of review is the same in both cases, we treat his directed verdict and sufficiency arguments as one. *Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007) ("If the evidence is sufficient to sustain a conviction upon appeal, then a motion for a directed verdict is properly denied; thus, our standard of review is essentially the same as that upon a challenge to the sufficiency of the evidence.")

Ind. Code § 35-45-2-1. The offense is raised to a Level 5 felony if "while committing it, the person draws or uses a deadly weapon." *Id.* Here, the State chose to charge Blackmon under subdivision (a)(2) of the statute, seeking to prove at trial that Blackmon had threatened Courtway with the intent that Courtway be placed in fear of retaliation for a prior lawful act. The charging information provided:

> On or about July 23, 2014 in St. Joseph County, State of Indiana, Leonard Blackmon did communicate a threat to another person, with the intent that said other person be placed in fear of retaliation for a prior lawful act, to-wit: Leonard Blackmon threatened to cut Donald Courtway with a knife, after Donald Courtway caught Leonard Blackmon stealing water, and in committing said act the defendant drew or used a deadly weapon.

Appellant's App. p. 31.

[9] On appeal, Blackmon alleges that the State presented insufficient evidence to prove that his actions constituted a threat or that he intended to place Courtway in fear of retaliation for having caught Blackmon stealing water. Because we find Blackmon's second argument to be dispositive, we need not address his argument that his actions did not constitute a threat.

## II. Retaliation for a Prior Lawful Act

## A. Sufficiency of Evidence that Courtway Caught Blackmon Stealing Water

[10] To convict a defendant of intimidation under Indiana Code section 35-45-2-1(a)(2), the State is required to prove beyond a reasonable doubt that the

defendant threatened the victim with the intent "that the other person be placed in fear of retaliation for a prior lawful act." This Court interprets statutes using well-established rules of statutory construction. *Casey*, 676 N.E.2d at 1072.

> When construing a statute, our foremost duty is to determine and give effect to the true intent of the legislature. We endeavor to give the statute in question a practical application so as to prevent absurdity, hardship, or injustice, and to favor public convenience. Additionally, we presume that all of the words appearing in the statute were intended to have meaning. Absent a clearly manifested purpose to the contrary, we endeavor to give the statutory language its plain and ordinary definition.

*Id.* (citations omitted).

[11]    In *Casey*, we examined the language of Indiana Code section 35-45-2-1(a)(2) and concluded:

> Construing these words together, it is apparent that the legislature intended to require the State to prove that the victim had engaged in a prior act, which was not contrary to the law, and that the defendant intended to repay the victim for the prior lawful act.

*Id.*

[12]    Here, the charging information specified Courtway's prior lawful act as: "Donald Courtway caught Leonard Blackmon stealing water." Appellant's App. p. 31. In support of his claim that the evidence was insufficient to prove that he acted to put Courtway in fear of retaliation for this prior lawful act, Blackmon makes two arguments: (1) Courtway did not commit this prior lawful

act; and (2) even if he did, Blackmon did not act with the intent to place Courtway in fear of retaliation for this prior lawful act.

[13]     As to Blackmon's first argument, the State maintains that it proved that Courtway caught Blackmon stealing water through circumstantial evidence. The State points out that Courtway saw the broken spigot with Hale's bucket underneath. Appellee's Br. p. 9. The State stresses the fact that Blackmon subsequently admitted to law enforcement that he had taken the water. Tr. p. 73. But while this evidence tends to establish that Blackmon took the water, it does not tend to establish that *Courtway caught* Blackmon taking the water, as was specified in the charge.

[14]     Furthermore, it is apparent from Courtway's testimony that he did not know who had taken the water at the time he went to confront Blackmon and Hale. *Id.* at 31. During the confrontation, Hale was the only person who made any remarks regarding the water and her statements did not implicate Blackmon. *Id.* at 32. As there is no evidence indicating that Courtway knew who took the water, there is no evidence that Courtway caught anyone taking the water. Consequently, we find that the State failed to present sufficient evidence that Courtway committed the prior lawful act as specified in the charging information.

[15]     Moreover, even had Courtway caught Blackmon stealing water, we believe that the evidence presented by the State was insufficient to allow the jury to

reasonably conclude that Blackmon acted with the intent to place Courtway in fear of retaliation for this act. In *Casey*, we held:

> [M]ere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient. Rather, the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act.

676 N.E.2d at 1072.

Our holding in *Ransley v. State* is illustrative of this point. 850 N.E.2d 443 (Ind. Ct. App. 1997). In that case, Ransley and Nolan were involved in an ongoing property dispute. *Id.* at 444. Nolan was out one day mowing grass near the disputed portion of the property when he noticed Ransley on his porch. *Id.* Nolan began to yell at Ransley, who in turn began to walk towards Nolan. *Id.* Nolan went back to his house, retrieved an axe handle, and came back out to confront Ransley. *Id.* At this point, Ransley pulled a handgun from his waistband and pointed it at Nolan. *Id.*

The State charged Ransley with intimidation, alleging in the charging information that Ransley had threatened Nolan "with the intent . . . that Nolan be placed in fear for the prior lawful acts including arguing with Ransley . . . ." *Id.* at 445. We found the evidence insufficient to establish this element of the charge, noting:

> Although Nolan was given the chance to testify that Ransley had threatened to kill or harm him for the prior lawful act of arguing, he made no such allegation. The 911 recordings supported the fact that Ransley's threats were intended to keep Nolan off his property. The

> State contends that Ransley was angry from his encounter with Nolan and that this anger prompted his actions. We recognize that a person may be angry enough to commit intimidation. However, anger, without proof of intent to retaliate, is not enough to satisfy the requirements of the statute.

*Id.* at 447.

[18] The facts of this case are substantially similar. Here, the State presented no evidence that Courtway caught Blackmon stealing water nor did it present any evidence that Blackmon believed he had been caught stealing water. Courtway did not testify that he believed Blackmon would retaliate because he had been caught stealing water. Courtway testified that Blackmon said nothing prior to drawing the knife. Tr. p. 32. It was not until after Courtway threatened to call the police that Blackmon drew the knife. *Id.* at 32-33. While this may have been evidence that Blackmon intended to stop Courtway from calling the police and thereby intended to make Courtway engage in conduct against his will—a crime under Indiana Code section 35-45-2-1(a)(1), *see Johnson v. State*, 717 N.E.2d 887, 890 (Ind. Ct. App. 1999) —this was not how the charge was brought. Consequently, we are compelled to conclude that the State failed to present sufficient evidence to prove that Blackmon intended to put Courtway in fear of retaliation for having caught him stealing water—an essential element of the crime as it was charged.

## B. Variance Between Pleading and Proof

[19] The State argues that even if the evidence does not support a conclusion that Courtway caught Blackmon stealing water, the conviction can still be affirmed.

According to the State, it was not required to show that Blackmon acted because Courtway *caught him stealing water*, but only that he acted because Courtway *confronted him about stealing water*. The State argues that these two concepts are essentially the same.[4] However, we believe that adoption of the State's position would violate Blackmon's constitutional right to be adequately notified of the charges against him and to prepare a defense accordingly.

[20] "The purpose of the charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Ben-Yisrayl v. State*, 738 N.E.2d 253, 271 (Ind. 2000). Accordingly, Indiana Code section 35–34–1–2(a)(4) requires that an indictment or information "allege the commission of an offense by . . . setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." The indictment or information also must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." I.C. § 35–34–1–2(d).

[21] Our Supreme Court has observed:

> The accused must be sufficiently apprised of the nature of the charges against her so she may anticipate the proof and prepare a defense in advance of trial. Consistency between the allegations charged and the

---

[4] Even if we were to accept the State's reading, we find that the State failed to present sufficient evidence to prove that Blackmon acted with the intent to place Courtway in fear of retaliation for confronting him. Once again, Courtway did not testify that he believed Blackmon intended to retaliate because Courtway confronted him, Blackmon said nothing prior to drawing the knife, and it was not until Courtway said that he would call the police that Blackmon drew the knife. Tr. p. 32-33; *See Ransley*, 850 N.E.2d at 447 (evidence insufficient to prove intent to retaliate for "arguing").

> proof adduced is required out of deference for the accused's constitutional right to be informed of the nature and cause of the accusation in sufficient detail to enable her to prepare her defense, to protect her in the event of double jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment.

*Myers v. State*, 510 N.E.2d 1360, 1366-67 (Ind. 1987) (citations omitted).  Here, the State admits that it "alleged that Courtway's prior lawful act was catching Blackmon stealing water" but that it "argued to the jury that his prior lawful act was confronting Blackmon about stealing water."  Appellee's Br. p. 13.  However, the State maintains that this is an insignificant variance between the charging information and the proof adduced at trial and that, as such, it is not fatal.

[22] "A variance is an essential difference between the pleading and the proof." *Madison v. State*, 234 Ind. 517, 531, 130 N.E.2d 35, 41 (1955) (quotations omitted).  Not all variances between the charging information and the proof offered at trial will warrant reversal.  *See Harrison v. State*, 507 N.E.2d 565, 566 (Ind. 1987) (charging information which incorrectly identified the owner of a burglarized church not fatal variance when it "could have in no way misled appellant or caused any hardship in his defense of the allegation."); *Daniels v. State*, 957 N.E.2d 1025, 1030 (Ind. Ct. App. 2011) (charging information alleging that defendant "drew" handgun when State presented evidence that he "used" handgun not fatal variance when there was "no indication that Daniels was prejudiced in the preparation or maintenance of his defense by the variance.")

[23] However, in light of the above-mentioned constitutional concerns, our Supreme Court has observed that a variance warrants reversal when the "variance between the charging information and the proof offered at trial actually misled the defendant in the preparation of her defense." *Myers*, 510 N.E.2d at 1367; *see also Madison*, 234 Ind. at 545, 130 N.E.2d at 48 (Arterburn, J., concurring). We believe that such is the case here.

[24] Initially, we note the difference between the words "catch" and "confront." "Catch," in the sense most naturally fitting the facts of this case, means "to discover unexpectedly" or "to become suddenly aware of," as in the phrase: "He was caught in the act." *Merriam-Webster's Collegiate Dictionary*, 195 (11th ed. 2003). Whereas "confront," in the sense put forward by the State, means "to meet face-to-face" or "to face especially in challenge." *Id.* at 262. Therefore, in common usage, these two words clearly define mutually exclusive concepts. One can "catch" someone doing something without "confronting" them about it. Likewise, one can "confront" someone about something without having "caught" them doing anything.

[25] Here, the record reveals that Blackmon's defense strategy was based on showing that Courtway had not "caught" Blackmon doing anything. This is apparent from the defense's opening statement. Tr. p. 24. It is also apparent from the defense's cross-examination of Courtway, who was the only eye witness to testify:

> Defense:     Now you had mentioned you were inside the house
>              when you heard the sound of water running, correct?

| | |
|---|---|
| Courtway: | Correct. |
| Defense: | All right. And then you went outside to investigate, correct? |
| Courtway: | Correct. |
| Defense: | Okay. Did you catch anybody there stealing water? |
| Courtway: | There wasn't anyone there. |
| Defense: | All right. You mentioned that all you saw was a bucket with the water running and the water was overflowing, correct? |
| Courtway: | Correct. |
| Defense: | Did you see anybody who had, say, come over to that faucet, broken that faucet, and turned the water on? |
| Courtway: | I seen no one do that. |

***

| | |
|---|---|
| Defense: | You don't know who broke the spigot, do you? |
| Courtway: | No I don't. |
| Defense: | And you don't know who turned the spigot on and placed the bucket under there, do you? |
| Courtway: | No. |

Tr. p. 38, 43.

[26]     Blackmon's strategy relied on the notion that, if he could show that Courtway never caught him stealing water, it would follow that his actions could not have been intended to place Courtway in fear of retaliation for that act. At the close of evidence, believing that his strategy had been successful, Blackmon moved for a directed verdict. *Id.* at 102. It was not until this point that the State argued that the phrase in the charging information "Donald Courtway caught Leonard Blackmon stealing water" really meant "Donald Courtway confronted

Leonard Blackmon about stealing water."[5] The trial court eventually agreed, and denied Blackmon's motion.

[27] Following this, the State, in its closing argument, informed the jury that the true prior lawful act at issue in this case was the confrontation.[6] Because of this, the State informed the jury that it did not have to prove that Blackmon intended to place Courtway in fear of retaliation for having caught him stealing water, but only for having confronted him about stealing water.[7]

[28] We believe that proper observance of Blackmon's constitutional right to be adequately informed of the charges against him and to prepare a defense compels reversal in this case. Criminal defendants have a constitutional guarantee that the State must prove every essential element of their offense

---

[5] There is no indication at any point prior to its response to Blackmon's motion for a directed verdict that the State believed the prior lawful act was the confrontation. It is apparent from the State's opening statement that it believed Courtway had caught Blackmon stealing water. Tr. p. 19.

During a colloquy regarding Blackmon's motion for a directed verdict, the State argued to the trial court:

State:  [The defense] is confused or misguided in what the prior lawful act is. The prior lawful act is that Mr. Courtway went and talked to the defendant. That's the prior lawful act."

*** 

Court:  Well that's not the way it's written, though, you admit. It says caught him stealing.

State:  Yes.

Tr. p. 104-05.

[6] During its closing argument, the State told the jury that it had to prove that Blackmon threatened Courtway "[w]ith the intent that Donald Courtway would be placed in fear of a prior lawful act. And while he did that, the prior lawful act being confronting him about stealing water, he used a deadly weapon . . . ." Tr. p. 118-19.

[7] The State informed the jury: "In fact, he [the defense] said the state wouldn't be able to prove that Mr. Blackmon stole the water, but we did. We didn't have to, but we did." Tr. p. 117.

beyond a reasonable doubt. *In re Winshop*, 397 U.S. 358, 361-64 (1970). That the defendant acted with the intent to place the victim in fear of retaliation for a prior lawful act is an essential element of the crime of intimidation as it was charged in this case. I.C. § 35-45-2-1(a)(2). It follows that the prior lawful act had to be identified in the charging information with sufficient specificity so as not to mislead Blackmon in the preparation of his defense. *Myers*, 510 N.E.2d at 1366-67; *Casey*, 676 N.E.2d at 1072-73.

[29] Given the clear difference in meaning between the words "caught" and "confronted," we cannot fault Blackmon for believing that one word did not imply the other and preparing his defense accordingly. The record shows that Blackmon was actually misled by this variance. He argued that the State would not be able to prove that Courtway caught him in his opening statement, devoted a substantial portion of his cross-examination of Courtway seeking to prove that Courtway had not caught him and, at the close of evidence, moved for a directed verdict on the issue. Tr. p. 24, 38, 43, 102-04. Blackmon was not informed that the State was reading the language of the charge in an unusually expansive manner until after he had presented his defense. Under these circumstances, we find that the variance between the charge brought by the State and the proof offered at trial is fatal.

[30] The judgment of the trial court is reversed and remanded with instructions to vacate Blackmon's conviction and sentence for Level 5 felony intimidation. Blackmon's conviction and sentence for class A misdemeanor possession of paraphernalia stands.

May, J., concurs, and Bradford, J., dissents with an opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Leonard Blackmon, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 71A03-1411-CR-413 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff* | |

**Bradford, Judge, dissenting.**

I must respectfully dissent from the majority's opinion as I would affirm Blackmon's conviction for intimidation.

In its charging information, the State alleged that "Blackmon did communicate a threat to another person, with the intent that said other person be placed in fear of retaliation for a prior lawful act, to-wit; Leonard Blackmon threatened to cut Donald Courtway with a knife, after Donald Courtway caught Leonard Blackmon stealing water." Appellant's App. p. 31. The facts leading up to Blackmon's threatening Courtway are as follows: (1) Courtway found that a

spigot lock had been broken off the spigot on the outside of his daughter's house and a bucket placed underneath; (2) Courtway knew that the neighbor, Hale, did not have running water and had been borrowing water from neighbors; (3) Courtway went to Hale's house and confronted Hale and Blackmon about the stolen water; (4) Hale offered to pay for the water; and (5) Courtway declined and told the two he was going to call the police, at which point Blackmon brandished a knife.

[33]     Courtway had ample reason to believe that Blackmon and/or Hale had stolen water and it was a lawful act to confront them and subsequently inform them that he was going to call the police. I cannot agree with the majority's conclusion that there is a distinction between "catching" Blackmon stealing water and "confronting" Blackmon about the stolen water. For all intents and purposes, Courtway did catch Blackmon stealing water. Firstly, there was significant circumstantial evidence implicating Hale and Blackmon, including the broken spigot lock with Hale's bucket underneath and the fact that Hale did not have running water and had been borrowing water from neighbors. Additionally, by offering to pay for the water, Hale tacitly admitted to at least some involvement in taking the water. Blackmon then drew a weapon, further indicating his guilt, and ultimately admitted to police that he did, in fact, steal the water. I find it inconsequential that Courtway did not know affirmatively that it was Blackmon, specifically, who had stolen the water considering the circumstantial evidence that indicated as much. In fact, the victim's subjective knowledge is irrelevant under Indiana's intimidation statute so long as the

victim's prior act was lawful. Regardless of Courtway's knowledge, Blackmon seems to have been of the mind that he had been caught and reacted aggressively. As such, I think it was reasonable for the jury to find that Blackmon threatened Courtway in retaliation for the prior lawful act of catching Blackmon stealing water.

[34]     Furthermore, I cannot agree with the narrow re-characterization of events to find that Blackmon only threatened Courtway in retaliation for his threatening to call the police, as opposed to his catching Blackmon stealing water. I see little logic in separating the act of catching someone performing illegal activity and subsequently calling the police regarding said activity; the two actions are part of the same series of events and, as such, the same prior lawful act.