

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harold E. Chastain,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 4, 2016<br><br>Court of Appeals Cause No.<br>20A03-1510-CR-1839<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Stephen R. Bowers, Judge<br><br>Trial Court Cause No.<br>20D02-1303-FC-75 |

**Barnes, Judge.**

## Case Summary

[1]     Harold Chastain appeals his conviction for Class C felony intimidation. We affirm.

## Issue

The sole issue before us is whether there is sufficient evidence to sustain Chastain's conviction for Class C felony intimidation.

## Facts

The evidence most favorable to the conviction is that, on the evening of March 8, 2013, Justin Beegle was waiting for a table with his family at the Between the Buns restaurant in Elkhart. Beegle heard Chastain loudly arguing with a woman, Tracy Wilmore, in the parking lot, and, after he saw Chastain shove her, Beegle decided to intervene. He began walking toward Chastain and Wilmore. Chastain noticed Beegle walking toward him and said, "do you have a f***ing problem?" Tr. p. 237. Beegle stopped walking when he was about ten to fifteen feet from Chastain and had some argumentative words with Chastain.[1] Chastain started walking toward Beegle, who told Chastain, "you don't want to do that . . . ." *Id.* at 238. Chastain then turned around, went to his truck, retrieved a handgun, cocked and pointed it at Beegle, and then said "I'll f***ing kill you" several times. *Id.* Beegle responded by telling Chastain he was a "f***ing p***y." *Id.* at 265. The encounter ended shortly thereafter when Chastain got in his truck and drove away.

---

[1] The evidence is unclear as to what exactly Beegle said to Chastain, but it seems uncontested that the words exchanged were argumentative in nature. Although testified to by a defense witness, the State does not dispute that Beegle said to Chastain as he was walking toward Chastain, "I'll beat your a** if you don't leave her alone." Tr. p. 318.

The State charged Chastain with Class C felony intimidation, Class D felony pointing a firearm, and Class B misdemeanor battery.[2]  The charging information did not specify what prior act Beegle allegedly had engaged in for which Chastain intended to place Beegle in fear of retaliation.  At Chastain's jury trial, however, the prosecutor argued that the prior lawful act was Beegle's interruption of the fight between Chastain and Wilmore.  After trial, Chastain was found guilty of all three charges.  The trial court entered judgments of conviction for all three counts but later merged the pointing a firearm conviction into the intimidation conviction at sentencing.  Chastain now appeals.

## Analysis

Chastain contends there is insufficient evidence to sustain his conviction for Class C felony intimidation.  In conducting such a review, we must consider only the probative evidence and reasonable inferences therefrom supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction."  *Id.*  We will affirm unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt.  *Id.*  The evidence need not overcome every reasonable hypothesis of innocence.  *Id.*

---

[2] The battery charge was related to Chastain's shoving of Wilmore.

[6] In order to convict Chastain of intimidation as charged, the State was required to prove that he communicated a threat to another person, with the intent that the other person be placed in fear of retaliation for a prior lawful act. *See* Ind. Code § 35-45-2-1(a)(2) (2013).[3] The offense was a Class C felony if the defendant drew or used a deadly weapon while communicating that threat. I.C. § 35-45-2-1(b)(2) (2013).[4] Here, the sole point of contention is whether the State adequately proved that Chastain intended to place Beegle in fear of retaliation for a prior lawful act when he pointed a firearm at and threatened to kill Beegle. We have held that, under the intimidation statute:

> "[M]ere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient. Rather, the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act."

*Blackmon v. State*, 32 N.E.3d 1178, 1182 (Ind. Ct. App. 2015) (quoting *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997)).

[7] As a general rule, penal statutes must be strictly construed against the State and any ambiguities they contain should be resolved in favor of the accused. *Shuai v. State*, 966 N.E.2d 619, 628 (Ind. Ct. App. 2012), *trans. denied*. Criminal

---

[3] The State specifically charged Chastain under this subsection and not the portion of the intimidation statute prohibiting a person from forcing another person to engage in conduct against the other person's will. I.C. § 35-45-2-1(a)(1) (2013).

[4] The offense of intimidation with a deadly weapon is now classified as a Level 5 felony.

statutes also should not "'be enlarged by construction, implication, or intendment beyond the fair meaning of the language used.'" *Id.* (quoting *Herron v. State*, 729 N.E.2d 1008, 1010 (Ind. Ct. App. 2000), *trans. denied*). "However, penal statutes are not to be read so narrowly as to exclude instances the statute fairly covers or in a manner that disregards legislative purposes and intent." *Id.*

[8] Chastain urges that we should reverse his intimidation conviction in light of our reversal of intimidation convictions in *Blackmon*, *Casey*, and *Ransley v. State*, 850 N.E.2d 443 (Ind. Ct. App. 2006), *trans. denied*. In *Casey*, the defendant got into a fight with one of the alleged victim's friends while they were at a bar. Later, the victim returned home. The defendant went to the victim's home with several friends. The victim went outside with two other persons and pleaded with the defendant to leave. Instead, the defendant told the victim to go inside. The defendant then struck one of the victim's friends in the head with a baseball bat, and said to the victim, "You're next b****" and that he was going to kill her. We held there was insufficient evidence as to a prior lawful act for which the defendant was intending to retaliate against the victim. *Casey*, 676 N.E.2d at 1073. We rejected the State's attempts to claim that the defendant was retaliating against the victim for her acts of being a patron at the bar, for being at her house, or for witnessing the baseball bat attack on her friend. *Id.*

[9] In *Ransley*, the defendant and alleged victim had an ongoing property-line dispute. On the day in question, the defendant called 911 following the victim having thrown items onto the defendant's property and yelling at the defendant, causing the defendant to feel threatened. Later, while mowing the grass, the

victim saw the defendant outside, stopped the mower, and began yelling again at the defendant. The defendant approached the victim, and the victim noticed that the defendant had a gun. The victim returned to his garage to grab an axe handle and walked back to the defendant, who then brandished his handgun. The victim did not remember the defendant saying anything at that time. Police then arrived and arrested the defendant, who was charged with and convicted of intimidation. We reversed, finding insufficient evidence that the defendant intended to communicate a threat to the victim for the purported prior lawful act of arguing over the property line. *Ransley*, 850 N.E.2d at 447-48. We acknowledged "that a person may be angry enough to commit intimidation. However, anger, without proof of intent to retaliate, is not enough to satisfy the requirements of the statute." *Id.* at 447.

[10] In *Blackmon*, the alleged victim believed that a neighbor or the neighbor's friend, the defendant, was stealing water from his daughter's home. The defendant went to the neighbor's house to confront someone about it. The victim began yelling at the neighbor and the defendant on the neighbor's driveway, demanding to know who had given them permission to use the water. The neighbor offered to pay for the water. The victim declined this offer and said he was going to call the police. At this point, the defendant pulled out a knife and held it above his head. The victim responded by implying that he would shoot the defendant. The defendant put the knife down, cursed at the victim, and walked away. The State specifically alleged in the charging information that the defendant had committed intimidation by putting the victim in fear of

retaliation for having caught the defendant stealing water. We reversed the defendant's conviction. First, we noted there was insufficient evidence that the victim had actually caught the defendant stealing any water, as alleged in the charging information. *Blackmon*, 32 N.E.3d at 1182. Additionally, there was no evidence that the victim believed the defendant intended to retaliate against him for any prior act; the defendant did not draw his knife until after the victim said he was going to call the police, but the State did not charge the defendant under the part of the intimidation statute prohibiting a defendant from forcing a victim to act against his or her will. *Id.* at 1183.

[11]     Two other, recent cases from this court not discussed by the parties warrant mentioning. The first is *Causey v. State*, 45 N.E.3d 1239 (Ind. Ct. App. 2015). In that case, police officers responded to a report of a disturbance at the defendant's residence. After officers arrived and attempted to speak with the defendant, he told the officers to get off his property and said, "if you come any closer I'll shoot." *Causey*, 45 N.E.2d at 1240. A panel of this court reversed the defendant's intimidation conviction. It held that the defendant's threat was "conditional" and intended to dissuade the officers from engaging in future conduct, i.e. coming any closer to the defendant, and was not a threat related to any past conduct of the officers. *Causey*, 45 N.E.3d at 1241 (citing *C.L. v. State*, 2 N.E.3d 798, 801 (Ind. Ct. App. 2014)).[5] The *Causey* panel also held that the

---

[5] *C.L.* was a juvenile delinquency case where the defendant threatened to beat up his grandfather if the grandfather did not give him money for a new car, out of loan proceeds the grandfather expected to receive; the majority reversed the delinquency adjudication for intimidation. *C.L.*, 2 N.E.3d at 801.

defendant's ranting before explicitly threatening to shoot the officers was insufficient to establish that he was threatening them for the act of having responded to the 911 call. *Id.* at 1242. It appears the *Causey* panel may have believed the officers were currently responding to a call when the defendant threatened them, not that they already had responded, and for this additional reason held there was insufficient evidence to support an intimidation conviction because there was no past act, only present engagement by the officers in a lawful act at the time of the threat. *See Causey*, 45 N.E.3d at 1242.

[12] In *Roar v. State*, 52 N.E.3d 940 (Ind. Ct. App. 2016), a different panel of this court disagreed with the holding and reasoning in *Causey*. In *Roar*, the defendant observed the victim serve an eviction notice on the defendant's sister. The defendant then immediately began yelling at the victim, calling her names and accusing her of being unprofessional; at the end of his tirade, he called the victim a "b****" and threatened to kill her "if [she] came back on the property." *Roar*, slip op. at 3. The *Roar* majority disagreed with *Causey* and *C.L.* The majority opinion observed:

> Mere use of conditional language in the course of communicating a threat does not vitiate the statute's application when the factual predicate for the threat was a prior lawful act of the victim. Stated another way, the language a defendant uses in communicating a threat may be relevant to the fact-finder's assessment of the defendant's intent, but the language used is not the only relevant consideration.

*Id.*, slip op. at 6. The majority held there was sufficient evidence to support the defendant's intimidation conviction, given the "clear nexus between the prior lawful act and the threat." *Id.* at 7. Recently, our supreme court granted transfer in *Roar* but adopted the majority opinion's analysis regarding sufficiency of the evidence. *Roar v. State*, No. 49S02-1607-CR-372 (Ind. July 12, 2016). We presume that by doing so, our supreme court also disapproved of the analysis and holdings of *Causey* and *C.L.*

[13]    We conclude that this case is unlike *Casey*, *Ransley*, and *Blackmon*. And, to the extent this case is highly similar to both *Causey* and *Roar*, our supreme court has now made it clear that *Roar* is correct and *Causey* is not. Here, Beegle committed a distinct lawful act by interrupting Chastain's argument and fight with Wilmore. Chastain then directed his anger toward Beegle. It is clear from the evidence that Chastain reacted in response to Beegle's interruption. Beegle was not merely an "innocent bystander" as was the alleged victim in *Casey*; rather, he had taken positive but legal action in attempting to end the confrontation between Chastain and Wilmore. Unlike in *Ransley*, Beegle and Chastain were not involved in an ongoing dispute, with each side badgering the other and engaging in back-and-forth aggressive conduct. And, the result in *Blackmon* turned largely upon the particular wording of the charging information and the prior lawful act it alleged for which the defendant was seeking retaliation. Here, the charging information was silent on the particulars of the prior lawful act, and there is no argument that the information had to include such detail.

[14] We acknowledge that Chastain did not explicitly tell Beegle *why* he pointed a gun at Beegle and repeatedly said that he was going to kill Beegle. Still, we conclude it was reasonable to infer from the evidence that Chastain's actions were prompted by the initial lawful act of Beegle interrupting his argument with Wilmore, and Chastain's threat was communicated with the intent to place Beegle in fear for that act. There is nothing in the intimidation statute that requires a defendant to expressly state what the victim's prior lawful act was for which a defendant intends to retaliate. It is well-settled that in criminal cases, the State "is not required to prove intent by direct and positive evidence." *Johnson v. State*, 837 N.E.2d 209, 214 (Ind. Ct. App. 2005), *trans. denied*. A defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case. *Id.* (quoting *Lykins v. State*, 726 N.E.2d 1265, 1270 (Ind. Ct. App. 2000)). *Roar* applied this principle of law in deciding that all the facts and circumstances of the case allowed an inference that the defendant intended to threaten the victim with retaliation for a prior law act, despite the "conditional" language used by the defendant.

[15] Furthermore, as a matter of public policy, we believe that persons in a position like that in which Beegle found himself should be able to attempt to defuse situations like the one between Chastain and Wilmore without being threatened with the use of deadly force for doing so. We believe the legislature intended to criminalize such conduct when it enacted the intimidation statute. To the extent Chastain contends that Beegle was engaged in a continuing act of

interfering with Chastain's argument when the threat was issued, the reasonable inference most favorable to the jury's verdict is that Chastain intended to threaten Beegle for his prior, completed lawful act of having already interrupted Chastain's argument. There is no requirement in the intimidation statute that the prior lawful act has to be completed for any considerable length of time before a threat is made.

[16] We conclude that, as held by this court in *Roar* and as adopted by our supreme court, a conviction under the intimidation statute should not depend upon a precise parsing of the threatening language used by a defendant or a detailed timeline of when a threat was issued in relation to a prior lawful act. Here, it is clear that Beegle engaged in a prior lawful act, and there was a clear nexus between that act and Chastain's threat to kill Beegle while pointing a gun at him. Thus, there is sufficient evidence to support the jury's finding that Chastain committed the crime of intimidation while drawing or using a deadly weapon.

## Conclusion

[17] There is sufficient evidence to sustain Chastain's conviction for Class C felony intimidation. We affirm.

[18] Affirmed.

Vaidik, C.J., and Mathias, J., concur.