

FILED

Sep 29 2017, 7:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Logansport, IN

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Laura R. Anderson
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert R. Fleming,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | September 29, 2017<br><br>Court of Appeals Case No.<br>09A05-1703-CR-645<br><br>Appeal from the Cass Superior<br>Court<br><br>The Honorable Richard A.<br>Maughmer, Judge<br><br>Trial Court Cause No.<br>09D02-1607-CM-537 |

**Mathias, Judge.**

[1] Robert Fleming ("Fleming") appeals his conviction for Class A misdemeanor intimidation. Specifically, Fleming argues that the State failed to prove that he

engaged in a true threat, and that the State failed to prove that he intended to place the victim Keith Kottkamp in fear of retaliation for a prior lawful act.[1]

We affirm.

## Facts and Procedural History

Rena and Keith Kottkamp awakened around 10:45 p.m. on June 30, 2016, to a woman's screams of "Help me! Help me!" coming from their front yard. Tr. p. 24. Mrs. Kottkamp arose, turned on the porch light, and saw Keisha Mowery ("Mowery") on their porch and at their front door. Mowery had come from Fleming's home, which is located across the road from the Kottkamps. Mrs. Kottkamp called the police, but while they were waiting for officers to arrive, Mowery returned to Fleming's home.

Cass County Sheriff Department Officers Gary Armstrong and Shane Johnson arrived soon after at Fleming's home. Fleming refused to allow either officer into his home, answer any questions, and repeatedly told the officers to get off of his property using foul language. As the officers left Fleming's property and headed to their vehicles, Fleming followed the officers telling them, "that's right, that's right. You do what I say. You get the f--- off my property." *Id.* at 53. Fleming then exclaimed, "oh, by the way if I could find your wives I would f--- your wives and show her, show your wives what a real man is." *Id.* Officers

---

[1] We held oral argument in this case at St. Francis University in Fort Wayne, Indiana on September 19, 2017. We thank the faculty, staff, and students for their gracious hospitality.

Armstrong and Johnson drove across the street to the Kottkamps. The Kottkamps reiterated what they observed, and the officers left without taking any further action.

[5] The Kottkamps returned to bed and attempted to fall back asleep. Approximately ten to fifteen minutes later, they were awakened again to Mowery's cries of "Help me! Help me!" *Id.* at 28. Mrs. Kottkamp went to the porch, but this time she made sure Mowery stayed with her while Mr. Kottkamp called the police. While the Kottkamps were waiting for the police, Fleming left his home and began approaching their property.

[6] Fleming stayed on his property as he yelled obscenities across the road at Mrs. Kottkamp, including calling her a "white-haired old bitch." *Id.* at 42. Upon hearing Fleming curse at his wife, Mr. Kottkamp came out on to the porch where he joined his wife and Mowery. At this point, Fleming yelled, "and what the hell do you want you old bastard?" *Id.* at 43. Fleming continued shouting across the street at the Kottkamps, at one point telling Mr. Kottkamp "that he was going to come over and kick [Mr. Kottkamp's] ass." *Id.* Upon hearing this, Mr. Kottkamp laughed. Approximately five minutes later, the police arrived for the second time.

[7] Officer Armstrong was now off duty, but Officer Johnson returned with Officer Brenton McDonald. Once the officers arrived, Fleming began retreating closer to his home, while using offensive language to tell the officers to mind their own business and to get off of his property. At this point, Officer Johnson put

Fleming in restraints for "his safety and my safety." *Id.* at 56. Officer
Johnson then arrested Fleming and transported him to jail.

[8]     On July 1, 2016, Fleming was charged with Class A misdemeanor intimidation
and Class B misdemeanor disorderly conduct. On February 8, 2017, a jury trial
was held, and the jury found Fleming guilty of both offenses. The sentencing
hearing was held on February 27, 2017, and Fleming was sentenced to 365 days
in the Cass County Jail for the intimidation conviction and 180 days in the Cass
County Jail for the disorderly conduct conviction. Fleming appeals only the
intimidation conviction.

## Standard of Review

[9]     Fleming contends that there was insufficient evidence to sustain his conviction
for Class A misdemeanor intimidation. When reviewing sufficiency of the
evidence claims, this court does not reweigh the evidence or assess the
credibility of witnesses. *Ransley v. State,* 850 N.E.2d 443, 445 (Ind. Ct. App.
2006), *trans denied.* We consider only the evidence most favorable to the verdict,
together with all reasonable and logical inferences to be drawn therefrom. *Id.*
The conviction will be affirmed if there is substantial evidence of probative
value to support the conclusion of the trier of fact. *Id.*

## Discussion and Decision

[10]    To convict Fleming of Class A misdemeanor intimidation, the State was
required to prove beyond a reasonable doubt that Fleming communicated a
threat to Mr. Kottkamp with the intent that Mr. Kottkamp be placed in fear of

retaliation for a prior lawful act. *See* Ind. Code § 35-45-2-1(a)(2). Specifically, the charging information states, "Robert Ryan Fleming did communicate a threat to Keith A. Kottkamp, with the intent that Keith A. Kottkamp be placed in fear of retaliation for a prior lawful act, contrary to the form of the statutes in such cases made and provided by I.C. 35-45-2-1(a)(2)." Appellant's App. p. 10. Therefore, the two questions here are: (1) did Fleming communicate a threat to Mr. Kottkamp? and (2) did Fleming communicate the threat with the intent that Mr. Kottkamp be placed in fear of retaliation for a prior lawful act?

## I. A True Threat

[11] For purposes of this case, a threat is defined as "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened." Ind. Code § 35-45-2-1(d)(1). Whether a statement is a threat is an objective question for the fact finder. *Newell v. State*, 7 N.E.3d 367, 369 (Ind. Ct. App. 2014), *trans. denied*. Our supreme court clarified in *Brewington v. State* that true threats depend on two necessary elements: (1) that the speaker intend his communications to put his targets in fear for their safety, and (2) that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target. 7 N.E.3d 946, 964 (Ind. 2014), *reh'g denied*.

[12] Concerning the first element, Fleming argues that his words did not express the requisite intent to threaten Mr. Kottkamp, but rather his "words were an invitation to engage in a fight and that he was confident he would 'whip [Mr. Kottkamp's] ass' during the fight." Appellant's Br. at 13. Citing *Newell*, the State counters and asserts, "Fleming's communication was blunt, verbal, and

uttered in the presence of the victim." Appellee's Br. at 12. We agree with the State.

[13] Fleming directly threatened to "beat [Mr. Kottkamp's] ass," Tr. pp. 44–46, 59, and the threat was made while Fleming was angry. *Id.* at 34, 44, 45. Therefore, a reasonable fact finder could conclude that Fleming's statement intended to put Mr. Kottkamp in fear for his safety, satisfying *Brewington's* first element.[2] *See Newell*, 7 N.E.3d at 370 (holding that it was for the fact-finder to determine whether the defendant was venting to a friend, or whether the defendant made a true threat).

[14] For the second element of a true threat under *Brewington*, Fleming argues, "An objectively reasonable person in Mr. Kottkamp's situation . . . would recognize that there was no possibility of physical harm so long as Mr. Kottkamp remained on his own property and took no further action to engage Fleming in an altercation." Appellant's Br. at 13. To support his argument, Fleming analogizes his statement to Mr. Kottkamp with his statements to the police officers and notes, "The reasonable officers in this case interpreted Fleming's actions as an attempt to provoke a confrontation and departed." *Id.* at 14.

---

[2] Fleming argues that Mr. Kottkamp's laughter in response to his threat shows that Mr. Kottkamp did not take it seriously. Appellant's Br. at. 12. In support, Fleming cites to the Supreme Court's decision in *Watts v. United States,* 394 U.S. 705 (1969). However, in *Watts* the defendant was addressing a crowd in reference to his opposition to the draft when he stated, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. at 706. The circumstances here are factually distinct and the record indicates that Mr. Kottkamp laughed because he knew the police were already on their way back to the residence. Tr. p. 44.

However, *Brewington's* second inquiry concerns the reasonableness of a private citizen in Mr. Kottkamp's position, and *not* a person in the position of the police officers at another time and place. Appellee's Br. at 16; *see Brewington*, 7 N.E.3d at 969 (explaining that the question under the second element is whether it was objectively reasonable for the victim to fear for their safety). The officers' reaction to Fleming is irrelevant to how Mr. Kottkamp reacted.

When asked whether he was scared that Fleming would cause him physical harm, Mr. Kottkamp responded, "Yes, sir." Tr. p. 43. Under these facts and circumstances, the evidence was sufficient for the jury to conclude that Fleming's words to Mr. Kottkamp represented a true threat.

### II. In Retaliation for a Prior Lawful Act

As well as proving a threat was issued, the State was also required to prove that the threat itself was delivered with the intent to retaliate for a prior lawful act. *See* Ind. Code § 35-45-2-1(a)(2). In *Casey v. State* we explained, "it is apparent that the legislature intended to require the State to prove that the victim had engaged in a prior act, which was not contrary to the law, and that the defendant intended to repay the victim for the prior lawful act." 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997).

We initially note that prosecutors' failure to specify the "prior lawful act" in the charging information is a recurring issue in appeals of criminal intimidation. There are times when the State alleges an incorrect prior lawful act. *Blackmon v. State*, 32 N.E.3d 1178, 1182 (Ind. Ct. App. 2015) (finding that the State failed to

present sufficient evidence that the defendant committed the prior lawful act that was specified in the charging information). In other circumstances, the State chooses to allege several prior lawful acts. *Ransley v. State*, 850 N.E.2d 443, 445–46 (Ind. Ct. App. 2006) (the State amended the charging information five days prior to trial to add a second potential prior lawful act), *trans. denied*; *Casey,* 676 N.E.2d at 1073 (the original charging information did not specify a prior lawful act, but on a motion to correct errors the State alleged three potential lawful actions). Also, the State at times relies on the evidence at trial to argue the prior lawful act that would support the intimidation conviction. *Chastain v. State*, 58 N.E.3d 235, 241 (Ind. Ct. App. 2016) (the State identified the prior lawful act at trial even though the charging information was silent on its particulars), *trans. denied.*

[19] Here, Fleming points out that the charging information did not specify the prior lawful act. Appellant's Br. at 11. However, the deputy prosecutor explained on two occasions during trial that the prior lawful act was Mr. Kottkamp "stepping out on to his front porch which he said he did to protect his wife." Tr. p. 69; *see also id.* at 62. Additionally, Fleming never filed a motion to dismiss for a lack of specificity with regard to the charging information,[3] nor does he raise this as an issue on appeal, and it is therefore waived. *Anderson v. State*, 15 N.E.3d 147, 149 (Ind. Ct. App. 2014).

---

[3] *See* Ind. Code § 35-34-1-8(a); Ind. Code § 35-34-1-4(a)(4).

[20] Instead, Fleming argues that analogous to our decision in *Casey*, the State failed to prove that Fleming made a threat to Mr. Kottkamp in retaliation for a prior lawful act. Appellant's Br. at 11. His primary contention here is that the evidence established that Fleming was attempting to entice Mr. Kottkamp into a fight, and he was not threatening Mr. Kottkamp for any prior lawful action.[4] *Id.* The State contends that the prior lawful act was Mr. Kottkamp stepping out on the porch in support of his wife. Appellee's Br. at 11.

[21] In *Casey*, a fight broke out at a bar between Casey and one of the victim's friends. 676 N.E.2d at 1071. Later that evening, Casey showed up at the victim's home with several friends. *Id.* The victim exited her apartment with two other people and pleaded for Casey to leave. Casey refused stating, "Get inside bitch, you're next." *Id.* Casey then struck one of the victim's friends in the head with a baseball bat and told the victim, "You're next bitch." *Id.*

[22] On appeal, we vacated Casey's intimidation conviction because the record did not support the contention that the victim was in fear of retaliation for any prior lawful action. *Id.* at 1073. We clarified:

---

[4] Fleming is incorrect to the extent that he argues that his actions do not rise to the level of criminal intimidation because "this case involves a conditional statement." Appellant's Br. at 11, 13; Reply Br. at 3. In *Roar v. State*, this court wrote and our supreme court adopted the standard that "[m]ere use of conditional language in the course of communicating a threat does not vitiate the statute's application when the factual predicate for the threat was a prior lawful act of the victim." 52 N.E.3d 940, 943 (Ind. Ct. App. 2016) (adopted and incorporated by *Roar v. State*, 54 N.E.3d 1001 (Ind. 2016)). The record identifies Mr. Kottkamp's prior lawful act occurred prior to Fleming's threat. Tr. pp. 62, 69. Therefore, Fleming's argument that he lacked the intent to threaten Mr. Kottkamp because the threat was conditioned on a future act fails in light of *Roar*.

> [M]ere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient. Rather, the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act.

*Id.* at 1072. The dispositive issue in *Casey* was that nothing in the record indicated that Casey was retaliating against the victim for any of the three prior lawful acts proffered by the State. *Id.*

[23] Although not mentioned by either party, we find the case before us more analogous to our recent decision in *Chastain v. State*, 58 N.E.3d 235. In *Chastain*, the victim was waiting for a table in the parking lot of a restaurant when he heard and saw Chastain arguing with and then shove a woman. *Id.* at 236 Chastain noticed the victim walking towards him and asked, "do you have a f***ing problem?" *Id.* After the two men had words, Chastain went to his truck where he retrieved a hand gun, cocked it, and pointed it at the victim saying, "I'll f***ing kill you" several times. *Id.*

[24] On appeal, we found the evidence sufficient to affirm the conviction due to the nexus between the lawful act and Chastain's threat to the victim. *Id.* at 241. We explained that even though Chastain did not tell the victim why he pointed a gun at him, "it was reasonable to infer from the evidence that Chastain's actions were prompted by the initial lawful act of [the victim] interrupting his argument with [the woman], and Chastain's threat was communicated with the intent to place [the victim] in fear for that act." *Id.* at 240.

In the present case, there is a clear nexus between a prior lawful act and the issued threat. The record indicates that Mr. Kottkamp walked out onto his porch after he heard Fleming yelling obscenities at his wife. Just after stepping outside, he was asked by Fleming, "what the hell do you want you old bastard?" Tr. p. 43. After Mr. Kottkamp chose not to respond, Fleming told him that he was going to come over and "kick [Mr. Kottkamp's] ass because [Mr. Kottkamp] came out" onto his porch. *Id.* at 45–46.

Mr. Kottkamp committed a distinct lawful act by stepping out onto his porch when he heard his wife being insulted. It is clear from the record that Fleming then reacted in response to Mr. Kottkamp's actions. While we acknowledge that Fleming did not explicitly tell Mr. Kottkamp why he was "going to come over and kick [Mr. Kottkamp's ass]," *Id.* at 43, we conclude that it was reasonable to infer from the evidence that Fleming's actions were prompted by Mr. Kottkamp stepping out onto his porch. *Chastain*, 58 N.E.3d at 241. Any finding to the contrary would require us to reweigh the evidence, which we will not do on appeal. *Id.* at 237.

## Conclusion

We as Indiana citizens need to better define the language that can be properly used during disagreements, in order to avoid a further coarsening of our civil society. Considering the evidence favorable to the jury's verdict, we conclude that the State presented sufficient evidence in this case to support Fleming's intimidation conviction.

Affirmed.

Baker, J., and Crone, J., concur.