## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 17 2019, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Hammerle
Steven T. Henke
Hackman Hulett LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Abdul Aziz Yamobi, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 17, 2019 <br><br> Court of Appeals Case No. 18A-CR-3064 <br><br> Appeal from the Boone Superior Court <br><br> The Honorable Matthew C. Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1711-F6-2155 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bench trial, Abdul Aziz Yamobi was convicted of intimidation and domestic battery, both Class A misdemeanors. Yamobi raises several issues for our review, which we consolidate and restate as: 1) whether the evidence was sufficient to sustain his intimidation conviction, and 2) whether there was a fatal variance between the charging information for domestic battery and the evidence presented leading to insufficient evidence supporting the crime charged. Concluding there is sufficient evidence for a finding of guilty on both intimidation and domestic battery, and there was no fatal variance between the charging information and evidence presented, we affirm.

# Facts and Procedural History

[2] The facts viewed most favorably to the trial court's judgment are as follows: In early 2016, Yamobi and LaDonna Yamobi were married; they separated in early 2017. After the separation, Yamobi moved to Arizona, and LaDonna moved to Zionsville, Indiana, and leased an apartment in her name only. In mid-2017, Yamobi moved back to Indiana from Arizona after he and LaDonna mutually agreed to attempt to reconcile their marriage. Yamobi moved into LaDonna's apartment and received a key, but the lease remained solely in LaDonna's name.

[3] In the beginning of September 2017, LaDonna began asking Yamobi to leave the apartment because they were not getting along. LaDonna described it as "a

very, very frustrating time." Transcript of Evidence, Volume 2 at 17. However, Yamobi consistently refused to leave LaDonna's apartment.

[4] In late October, LaDonna began staying with her parents because she refused to stay in her apartment unless Yamobi left. While LaDonna was with her parents, she notified Yamobi that she would call the police to remove him if he did not leave; Yamobi, again, refused her request.

[5] On October 31, LaDonna reported to police that Yamobi would not leave her apartment. Officers arrived at the apartment and, at their request, Yamobi left the apartment and walked to a nearby business where he sat in the parking lot for approximately four hours.

[6] When LaDonna returned to her apartment, she used a stick she had purchased to barricade her door because she was concerned Yamobi might return; LaDonna did not invite Yamobi back to the apartment. Moments later, while LaDonna was bathing, Yamobi broke through the apartment door barricade. LaDonna recalled that when Yamobi entered the bathroom, he began to shove her underwater by pushing on her head, the back of her neck, and her arms, and stated, "Can you swim, B*tch, can you swim[?] I'll drown your mother f***ing a**." *Id.* at 22.[1]

---

[1] Yamobi minimizes LaDonna's testimony in his brief, stating, "At trial, LaDonna claimed that [Yamobi] had asked her whether she could swim, touched her on the back of her head and arm, and sang a threat while holding a pot of boiling potatoes." Appellant's Brief at 6.

LaDonna was able to get Yamobi off of her and told him to get out. Yamobi retrieved a pot of boiling potatoes from the stove, walked toward LaDonna, and threatened to burn her. Specifically, LaDonna testified that "he threatened to douse me with those potatoes and dared me [to] challenge him on that because I was a pretty b*tch but I'd be a scarred mother f***er[.]" *Id.* at 23.

The State charged Yamobi with intimidation and domestic battery.[2] After a one-day bench trial, the court found Yamobi guilty of both crimes. He was sentenced to concurrent one-year terms. Yamobi now appeals.

# Discussion and Decision

## I. Intimidation

### A. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, "we neither reweigh the evidence nor judge the credibility of the witnesses[.]" *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the judgment. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We consider conflicting evidence in the light most favorable to the trial court's ruling and will affirm the

---

[2] Yamobi was also charged with criminal confinement and intimidation, both Level 6 felonies. These charges were dismissed prior to trial. Appellant's Appendix, Volume II at 42.

conviction unless no reasonable fact-finder could find that the elements of the crime were proven beyond a reasonable doubt. *Id.*

## B. Sufficiency of Evidence

[10] Yamobi contends the State failed to present sufficient evidence to support his conviction of intimidation. To obtain a conviction of intimidation, the State was required to show Yamobi "communicate[d] a threat with the intent . . . that [LaDonna] be placed in fear of retaliation for a prior lawful act[.]" Ind. Code § 35-45-2-1(a)(2).

[11] Yamobi challenges his conviction of intimidation solely on the ground that the State failed to prove any threat he made was linked to a prior lawful act. Although there is no direct evidence linking Yamobi's threat to LaDonna's prior lawful act, "[c]ircumstantial evidence will be deemed sufficient [to sustain a conviction] if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Pierce v. State*, 761 N.E.2d 821, 826 (Ind. 2002). Based on our review of the record, the circumstantial evidence is sufficient to link Yamobi's threat to a prior lawful act, that is, LaDonna telling Yamobi to leave her apartment and calling the police when he did not.

[12] This case is similar to *Chastain v. State*, 58 N.E.3d 235 (Ind. Ct. App. 2016), *trans. denied*. In *Chastain*, a bystander noticed the defendant arguing with a woman in a parking lot and decided to intervene after he saw the defendant shove the woman. The defendant became upset as he and the bystander

exchanged "argumentative words" and retrieved a handgun from his vehicle. *Id.* at 237. He pointed it at the bystander and said, "I'll . . . kill you" several times. *Id*. The defendant was convicted of intimidation and challenged his conviction on the basis that the State did not prove the bystander engaged in a distinct prior lawful act. We held that the bystander's attempt to end the confrontation was a prior, completed lawful act, and there was a clear nexus between that act and the defendant's threat to kill the bystander. *Id*. at 240-41.

[13] Here, the factfinder could reasonably infer from the evidence that Yamobi's actions were prompted by LaDonna telling Yamobi to vacate the apartment and then calling the police when he refused. After police requested that Yamobi leave the apartment, he did leave for a period of time. But he returned to LaDonna's apartment uninvited several hours later, grabbed her, and threatened to burn her. This was LaDonna's apartment, as only her name was on the lease. She had the legal right to exclude Yamobi from her apartment and, therefore, the right to call the police when he did not comply with her wishes. Although the time between the prior lawful act and the threat is much longer in this case than in *Chastain*, there is no requirement that the retaliation be immediate. LaDonna's call to the police was a prior, completed lawful act, and Yamobi's return to her apartment hours later to threaten her had a clear nexus to that act.

[14] Furthermore, Yamobi testified that prior to LaDonna leaving to stay with her parents, no problems existed between the two. Yamobi's own testimony demonstrates a nexus between LaDonna's call to police and his threat to injure

her. Had Yamobi offered evidence showing there was some sort of intervening event, independent of LaDonna telling him to leave and calling the police, then the outcome might be different. However, Yamobi did not offer such evidence. We therefore conclude the evidence shows a nexus between LaDonna telling Yamobi to leave and calling the police and Yamobi's subsequent threat. Accordingly, the evidence is sufficient to support Yamobi's intimidation conviction.

## II.  Domestic Battery

[15] Yamobi contends his domestic battery conviction should be reversed due to a variance between the charging information and the evidence presented at trial. The charging information for domestic battery reads as follows:

> [O]n or about November 1, 2017 in Boone County, State of Indiana, Abdul Aziz Yamobi did knowingly or intentionally touch Ladonna Yamobi, a family or household member in a rude insolent or angry manner by grabb[ing] her by the hair and arm[.]

Appellant's Appendix, Volume II at 9. Yamobi alleges that the State failed to present evidence that he grabbed LaDonna by the hair as charged in the information and that such failure is fatal to his conviction of domestic battery. The State responds that even if there was a variance, it is immaterial. When a defendant claims there is a variance between the charging information and the evidence, we must determine whether the variance is material. *McCullough v. State*, 672 N.E.2d 445, 448 (Ind. Ct. App. 1996), *trans. denied*. A variance between the charging information and proof at trial is material only if it

misleads the defendant in preparation of his defense or subjects him to the likelihood of another prosecution for the same offense. *Downs v. State*, 656 N.E.2d 849, 852 (Ind. Ct. App. 1995).

[16] LaDonna testified Yamobi pushed her by the head and neck; hair grows on an individual's head. Yamobi did not offer evidence showing how this minor discrepancy in the charging information prejudicially misled him or exposed him to double jeopardy. *See Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997). Nor does this discrepancy mislead Yamobi in his defense to the charge of domestic battery. Yamobi was aware of the allegations against him. Yamobi's defense was not based on the location of the touching as stated in the information, namely LaDonna's hair. Instead, his defense was mainly to deny that he touched LaDonna in a rude or angry manner. Yamobi further does not allege that the variance would expose him to double jeopardy. Certainly, if the State indicated that it was planning to charge Yamobi with the same touching twice, then the result might be different. However, that is not the case here. Under these circumstances, we conclude that any variance was not material or fatal.

[17] Further, the charging information in the current case alleges the essential elements of the charged crime. Indiana Code section 35-42-2-1.3 provides:

> (a) [A] person who knowingly or intentionally:
>
> > (1) touches a family or household member in a rude, insolent, or angry manner . . .

commits domestic battery, a Class A misdemeanor.

[18] As noted above, the State offered evidence to support the charge of domestic battery. Although Yamobi testified that he grabbed LaDonna in a sexual way and LaDonna began grabbing him back in a sexual manner, the evidence most favorable to the judgment is that Yamobi pushed on her head, the back of her neck, and her arms in a rude, angry manner, which satisfies the elements of domestic battery as stated above. This is Yamobi's attempt to implore this court to reweigh the evidence and judge the credibility of the witnesses, which is not the province of this court. *See Wright*, 828 N.E.2d at 906. Therefore, the evidence is sufficient for a reasonable factfinder to find the elements of domestic battery were proven.

# Conclusion

[19] There is sufficient evidence to support Yamobi's convictions for intimidation and domestic battery, and there was no fatal variance between the domestic battery charging information and the evidence presented. We therefore affirm Yamobi's convictions.

[20] Affirmed.

Mathias, J., and Pyle, J., concur.