## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 14 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David A. Felts
Locke & Witte
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cory J. Brightharp, *Appellant-Defendant,* | September 14, 2020 |
| | Court of Appeals Case No. 20A-CR-649 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Wendy Davis, Judge |
| | Trial Court Cause No. 02D06-1912-F6-1527 |

**Bailey, Judge.**

# Case Summary

Cory J. Brightharp ("Brightharp") challenges his convictions and sentence for Intimidation[1] and Criminal Recklessness,[2] as Level 6 felonies. We affirm.

# Issues

Brightharp presents three issues for review:

    I.      Whether sufficient evidence supports his conviction for Intimidation;

    II.     Whether his sentence is inappropriate; and

    III.   Whether he was denied the effective assistance of trial counsel.

# Facts and Procedural History

During the fall of 2019, Timothy Hardy ("Hardy") was living in a Fort Wayne residence with his daughters and his fiancée, Candice Bibs ("Bibs"). Hardy observed that Brightharp sometimes slept in a chair in an alley across the street from Hardy's residence. One day, Brightharp showed up outside Hardy's house and began to confront Hardy about "the woman in his house" and an alleged debt she owed Brightharp. (Tr. at 81.) Thereafter, Brightharp

---

[1] Ind. Code § 35-45-2-1(a).

[2] I.C. § 35-42-2-2(a).

continued to confront Hardy at least weekly, with the common themes that Bibs owed Brightharp money, Hardy should intervene, and it was unfair that Bibs was living with Hardy while Brightharp had been left homeless. Hardy and Bibs frequently called the police after these encounters.

[4] In November, Hardy and Brightharp were at a Phillips 66 convenience store on Wayne Trace Road when Brightharp again confronted Hardy. On this occasion, an employee of Phillips 66 called for police assistance and Brightharp left the premises.

[5] During the early morning hours of December 1, 2019, Hardy returned to the same Phillips 66 store to purchase a lottery ticket. He sat down to fill out the form and noticed that Brightharp sat down nearby. Brightharp expressed his desire to "talk about the woman in [Hardy's] house" and questioned why "she had not paid the money" and Brightharp had "lost the house." (*Id.* at 85.) Hardy got up and moved toward the cash register, telling Brightharp that "he had a personal problem and probably needs to go to small claims." (*Id.*)

[6] As Hardy paid for his purchases and walked to his truck, Brightharp followed, calling Hardy names such as "punk" and "bitch." (*Id.* at 86.) He claimed that Hardy "hid behind his truck and the police." (*Id.*) As Hardy prepared to drive away, he saw his friend, Dave Cotton ("Cotton"), arrive at the store. Hardy decided to get out of his truck and warn Cotton about Brightharp.

[7] When Hardy and Cotton began to talk, they saw Brightharp approach and pull out a long-blade knife. Brightharp got within two or three feet of Hardy and

pointed the knife directly at Hardy, saying: "it's going to be your day." (*Id.*) Hardy raised his hands and moved his body sideways in an attempt to protect an artery if Brighton lunged. Brightharp repeated such phrases as "I've got nothing to lose" and "I've got something for you" until Hardy persuaded him to "fight like men with [only] their hands." (*Id.* at 90, 91, 128.) Brightharp then dropped his knife, reached into his pocket and retrieved a second knife, and placed them both on the ground. He began to remove his outer clothing, as if preparing for a fight.

[8] Police officers, summoned by employee Priscilla Guerrero ("Guerrero"), arrived and interviewed those present. They placed Brightharp under arrest. On December 5, 2019, Brightharp was charged with Intimidation and Criminal Recklessness. On February 19, 2020, a jury convicted Brightharp as charged.

[9] At the sentencing hearing, conducted on March 12, 2020, Brightharp confirmed the accuracy of the Presentence Investigation Report ("PSI"). When interviewed, Brightharp had denied any history of mental illness. His counsel interjected that he believed the PSI inaccurately portrayed the state of Brightharp's mental health. According to defense counsel, Brightharp was competent and able to assist in his defense, but counsel asked that the trial court "take into consideration for sentencing purposes [Brightharp's] mental health issues." (*Id.* at 223.) The trial court imposed upon Brightharp concurrent sentences of two years and 183 days for Criminal Recklessness, with one year suspended, and two years, with one year suspended, for Intimidation.

Additionally, the trial court ordered that Brightharp be given a psychological assessment. Brightharp now appeals.

# Discussion and Decision

[10] Pursuant to Indiana Code Section 35-45-2-1(a), "A person who communicates a threat with the intent: . . . that another person engage in conduct against the other person's will; [or] that another person be placed in fear of retaliation for a prior lawful act . . . commits intimidation, a Class A misdemeanor." The offense is elevated to a Level 6 felony if the threat is to commit a forcible felony. *Id.* Here, the Information alleged that Brightharp communicated a threat to Hardy, with the intent that Hardy engage in conduct against his will or be placed in fear of retaliation for a prior lawful act, and the threat was to commit a forcible felony. In closing argument, the State contended that Hardy was goaded into a fight and that he had engaged in prior lawful acts of having a relationship with Bibs and calling for police assistance.

[11] On appeal, Brightharp argues that the State presented insufficient evidence to show he intended that Hardy engage in conduct against Hardy's will or be placed in fear of retaliation for a prior lawful act. Brightharp argues that Hardy voluntarily "tried to engage Brightharp in a fight" and had verbally accosted Brightharp in an unlawful manner. Appellant's Brief at 12. For the purposes of the crime of Intimidation, a threat is defined, in relevant part, as "an expression, by words or action, of an intention to ... unlawfully injure the person threatened or another person, or damage property ... [or] commit a

crime." I.C. § 35–45–2–1(d). "A defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case." *Chastain v. State*, 58 N.E.3d 235, 240 (Ind. Ct. App. 2016), *trans. denied*.

[12] Our standard of review for sufficiency is clear: we will consider only the evidence most favorable to the verdicts and the reasonable inferences to be drawn therefrom. *Leonard v. State*, 73 N.E.3d 155, 160 (Ind. 2017). We will affirm a conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We will neither reweigh the evidence nor reassess the credibility of witnesses. *Id.*

[13] Hardy testified to having some history with Brightharp with the latter repeatedly insisting that Hardy's fiancée owed Brightharp money and Hardy should answer for that debt. Hardy had responded by calling police. Hardy testified further that, on December 1, 2019, Brightharp approached Hardy, accused him of hiding behind the police, pointed a knife directly at him, and announced "it's going to be your day." (Tr. at 90.) Cotton testified that Brightharp was yelling and screaming such phrases as "I've got something for you" and confirmed that Brightharp pulled out a knife and pointed it directly at Hardy. (*Id.* at 128.) Brightharp persisted in pointing the knife at Hardy and continuing his diatribe even after Guerrero came outside the convenience store and tried to reason with Brightharp. Brightharp disarmed himself only after being challenged to a fight without weapons. Police officers recovered two knives in proximity to Brightharp.

[14] Indiana Code Section 35-45-2-1(a), setting forth the elements of the crime of Intimidation, is written in the disjunctive. The State was required to establish beyond a reasonable doubt that Brightharp intended that Hardy engage in conduct against his will or intended to place Hardy in fear of retaliation for a prior lawful act. The eyewitness testimony and physical evidence is sufficient to permit the factfinder to conclude beyond a reasonable doubt that Brightharp intended to place Hardy in fear of retaliation for a prior lawful act. Brightharp's argument that Hardy openly expressed a desire to fight, and thus Brightharp did not intend that Hardy commit an act against Hardy's will, is at bottom an invitation to reweigh the evidence. This we cannot do. *Leonard*, 73 N.E.3d at 160. Sufficient evidence supports Brightharp's conviction of Intimidation.

## Sentencing

[15] Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by a trial court. *Sanders v. State*, 71 N.E.3d 839, 843 (Ind. Ct. App. 2017), *trans. denied*. This appellate authority is embodied in Indiana Appellate Rule 7(B). *Id.* Under 7(B), the appellant must demonstrate that his sentence is inappropriate in light of the nature of his offense and his character. *Id.* (citing Ind. Appellate Rule 7(B)). In these instances, deference to the trial courts "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[16] The Indiana Supreme Court has explained that the principal role of appellate review is an attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

[17] A defendant convicted of a Level 6 felony is subject to a sentencing range of six months to two and one-half years, with one year as the advisory sentence. I.C. § 35-50-2-7(b). Brightharp received concurrent sentences of two and one-half years and two years, with one year of each suspended to probation. He contends that the nature of the offenses and his character do not support his aggregate sentence. In particular, he emphasizes that there were indications of his mental instability and that the most serious offenses in his criminal history are remote in time.

[18] First, we look to the nature of the offenses. Brightharp followed a patron of a convenience store through the store and into the parking lot, yelling insults and obscenities. Cotton heard the yelling and screaming and became concerned. After he moved into very close proximity to Hardy, Brightharp pulled out a long-blade knife and announced, "It's going to be somebody's day. I have nothing to lose." (Tr. at 90.) Guerrero, fearful for her safety and that of her customers, encouraged Brightharp to drop the knife. He refused to do so until challenged to a fistfight. Nothing in the nature of the offenses, involving several individuals, militates toward a lesser sentence.

[19] Next, we consider the defendant's character. Brightharp has an extensive criminal history consisting of four prior felony convictions and two misdemeanor convictions. As the trial court observed, the most serious of these convictions (for Gross Sexual Battery and Drug Trafficking in the State of Ohio) were remote in time. However, Brightharp was serving a suspended sentence for Criminal Trespass when arrested in this case. Brightharp's attorney stated at the sentencing hearing that Brightharp may have received mental health treatment at some time but discontinued prescribed medication. When interviewed for the PSI, Brightharp denied that he suffered from a mental illness.[3]

[20] In sum, Brightharp has not presented compelling evidence that portrays in a positive light the nature of the offenses or his character. Absent such evidence, we are unpersuaded that his sentence is inappropriate.

---

[3] To the extent that Brightharp suggests that the trial court did not accord proper weight to the remoteness of some of his criminal history or to the defense attorney's suggestion that Brightharp suffers from a mental illness, the contentions are not available for review. Our Indiana Supreme Court has succinctly summarized the sentencing review framework:

The imposition of sentence and the review of sentences on appeal should proceed as follows:

1. The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence.

2. The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion.

3. The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.

4. Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).

*Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

# Effectiveness of Counsel

Finally, Brightharp claims that he was denied the effective assistance of trial counsel because counsel did not tender a jury instruction relative to mental illness. We review ineffectiveness claims as follows:

> Ineffective assistance of counsel claims are evaluated under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, [the appellant] must show: 1) that counsel's performance was deficient based on prevailing professional norms; and 2) that the deficient performance prejudiced the defense. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

> In analyzing whether counsel's performance was deficient, the Court first asks whether, "'considering all the circumstances,' counsel's actions were 'reasonable [ ] under prevailing professional norms.'" *Wilkes*, 984 N.E.2d at 1240 (quoting *Strickland*, 466 U.S. at 668, 104 S.Ct. 2052). Counsel is afforded considerable discretion in choosing strategy and tactics, and judicial scrutiny of counsel's performance is highly deferential. *Id*.

> To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stevens*, 770 N.E.2d at 746.

> Counsel is afforded considerable discretion in choosing strategy and tactics and these decisions are entitled to deferential review. *Id*. at 746-47 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Furthermore, isolated mistakes, poor strategy, inexperience and instances of bad judgment do not necessarily render representation ineffective. *Id*. at 747 (citations omitted).

*Weisheit v. State*, 109 N.E.3d 978, 983-84 (Ind. 2018).

[22] Brightharp argues that counsel should have tendered a jury instruction on mental illness so that (1) the jury could have concluded that he lacked the requisite criminal intent and (2) he could have avoided placement in the Department of Correction and instead been given "a proper alternative sentence." Appellant's Brief at 16.

[23] Had Brightharp raised and supported an insanity defense, he could have avoided criminal liability and incarceration. Even where the State meets its burden to prove the elements of a criminal offense beyond a reasonable doubt, a defendant in Indiana can avoid criminal responsibility by successfully raising and establishing the "insanity defense." *Galloway v. State*, 938 N.E.2d 699, 708 (Ind. 2010) (citing I.C. § 35–41–3–6(a)). "A successful insanity defense results in the defendant being found not responsible by reason of insanity." *Id.* The defendant bears the burden of establishing the insanity defense by a preponderance of the evidence and must establish both (1) that he or she suffers from a mental illness and (2) that the mental illness rendered him or her unable to appreciate the wrongfulness of his or her conduct at the time of the offense.

*Id.* "Thus, mental illness alone is not sufficient to relieve criminal responsibility." *Id.*

But although he obliquely asserts that he lacked criminal intent, Brightharp does not argue that defense counsel should have raised an insanity defense, nor does he point to evidence that would have supported the defense. At bottom, Brightharp does not provide us with either the text or context of the desired instruction. In these circumstances, we readily conclude that Brightharp has not shown that he was prejudiced by defense counsel's failure to tender an instruction.

# Conclusion

Sufficient evidence supports Brightharp's conviction for Intimidation. His sentence is not inappropriate. He has not shown that he was denied the effective assistance of trial counsel.

Affirmed.

Vaidik, J., and Baker, Sr. J., concur.