## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 16 2020, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

Shannon Keating
Certified Legal Intern

Alexis Sizemore
Certified Legal Intern

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert James Plato, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 16, 2020 <br><br> Court of Appeals Case No. <br> 20A-CR-475 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Andrew R. Hopper <br><br> Trial Court Cause No. <br> 48C03-1805-F5-1294 |

**Altice, Judge.**

## Case Summary

Robert James Plato, Jr., appeals from the revocation of his probation. On appeal, Plato argues that the evidence is insufficient to support revocation and that the trial court abused its discretion in revoking his four-year suspended sentence.

We affirm.

## Facts & Procedural History

On March 3, 2014, Plato was sentenced to the Indiana Department of Correction (DOC) for eight years for robbery under Cause No. 68C01-1308-FB-580 (FB-580). On April 2, 2018, Plato was charged with attempted robbery as a Level 5 felony under Cause No. 48C03-1805-F5-1294 (F5-1294). On August 24, 2018, Plato pled guilty as charged under F5-1294 and was subsequently sentenced to a four-year suspended sentence. The court ordered the sentence be served consecutively to the sentence in FB-580.

On July 17, 2019, the State charged Plato with intimidation as a Level 6 felony under Cause No. 48C03-1907-F6-1715 (F6-1715). This charge stemmed from an April 14, 2019 letter that Plato sent to Madison County Sheriff Scott Mellinger in which he made statements threatening physical harm to Detective LeeAnn Dwiggins of the Madison County Drug Task Force (DTF). Thereafter, Sheriff Mellinger received a second letter from Plato dated October 10, 2019, in

which Plato made threats to physically harm Sheriff Mellinger. Plato was incarcerated when he sent the letters.

[5] On November 12, 2019, the State filed a notice of violation of suspended sentence in F5-1294, alleging that Plato violated the terms of his probation by (1) committing a criminal act as alleged in F6-1715 and by (2) "[f]ail[ing] to behave well in society" by committing a new criminal offense of intimidation on or about October 10, 2019. *Appellant's Appendix* at 103.

[6] On December 18, 2019, the State charged Plato with intimidation as a Level 6 felony under Cause No. 48C03-1912-F6-3009 (F6-3009)[1] based on threats he made in the October letter. On January 21, 2020, the State amended the notice of violation of suspended sentence to reference the filing of the charging information in F6-3009. The court held an evidentiary and sanctions hearing on February 5, 2020.

[7] During the hearing, Sheriff Mellinger testified that he received a handwritten letter in April 2019 from Plato in which Plato indicated that he was "extremely angry" with members of the DTF, including Detective Dwiggins. *Transcript* at 11. Plato specifically accused Dwiggins of stealing his laptop computer, which was seized pursuant to a lawful search warrant issued as part of the attempted

---

[1] The charging information under F6-3009 is not in the record before us.

robbery investigation, and believed he was owed $1200 to cover the value thereof. In the letter, which was admitted as State's Exhibit 1, Plato stated:

> I mailed you a letter requesting a meeting to be held between you and I in an attempt to resolve our issue. By your lack of response, you basicall[y] said "Go F*ck Yourself." You should not have done that Scott. I've tried to deal with and handle this situation with a cool clear head but that isnt [sic] working.

* * *

> So, until you and your department reimburses [sic] me for <u>all</u> my property that was stolen directly by your deputies or that they caused to be stolen, a new arrangement will take effect.

> I will <u>not</u> in any way, shape, form or fashion harm any Madison County Deputy <u>unless</u> they come at me <u>armed</u> which will be treated as an act of aggression.

> <u>Each</u> and <u>every</u> Madison County Sheriffs vehicle, both marked and unmarked, where ever [sic] they will be found, <u>will</u> receive a Hornady 750 gr. A Max .50 BMG through its grill and engine block.

* * *

> You decide to take your panties off and let your balls drop so we can talk about and resolve this issue, you know where I'm at (but wont [sic] be here to [sic] much longer, you need to hurry).

* * *

P.S. You need to resolve this issue with my computer right away. Dwiggins is nothing more than a common thief not a DTF deputy and the very first time I see that thief, I will not treat her as a deputy of Madison County but as a thief, and will beat the breaks off that b\*tch. McDonalds, Walmart, dont [sic] matter where I ever see her, she will be beat like a thief!

*Exhibits* at 4-6 (underlining in original).

[8]     On May 5, 2019, Plato was interviewed by a law enforcement officer. Plato agreed to record the conversation, and he was advised of his rights. While the officer was setting up the recording instrument and preparing a waiver of rights, Plato stated, "I'm a violent man, a very violent man!" *Appellant's Appendix Vol. II* at 109. During the interview, Plato was asked about the threats of shooting police cars, and Plato said he was not going to do it. He stated, however, that although he did not have a gun, there were still ways he could obtain one. Plato assured the officer that he was not going to shoot up police cars, but, according to the officer, Plato "was very firm in his conviction about committing battery against Detective Dwiggins." *Id.* at 110.

[9]     Sheriff Mellinger also testified about and read excerpts from a second handwritten letter he received from Plato in October 2019, which was admitted as State's Exhibit 2. In this letter, Plato referred to Sheriff Mellinger's "band of

thieves" and stated that he had reached "the highest point of pisstivity."

*Exhibits* at 7. After indicating that he was soon to be released,[2] Plato continued:

> I am about to return to Anderson with my blood boiling!  I <u>told</u> <u>you</u> that I am <u>not</u> going to just drop this or let it go.

> So now, you have a <u>very</u> <u>volatile</u> situation on your hands that needs to be delt [sic] with and resolved <u>right</u> <u>f*cking</u> <u>now</u>!  I can return to Anderson in a state of peace or on a path of <u>total</u> <u>destruction</u> <u>and</u> <u>all</u> <u>out</u> <u>war</u>.

*Id.* at 7-8 (underlining in original).  Plato also stated:

> Dwiggins, Anderson, and Boynton would rather blow their own brains out with their duty Glocks, over f*cking with me about the flag and my mothers [sic] ashes.  That is a promise I am betting my life on!  <u>All</u> <u>in</u>!

> I've got the motive, the means, and the opportunity is just mere days away!

*Id.* at 9-10 (underlining in original).  He continued,

> <u>I'm</u> <u>giving</u> <u>you</u> <u>my</u> <u>word</u> that if you, Dwiggins, Anderson and Boynton <u>don't</u> fix this and <u>right</u> <u>f*cking</u> <u>now</u>, you will most definitely be held accountable for your actions.

> So, how are we going to fix this Scott?  I <u>promise</u> you that if we don't resolve this Scott, the very first time we meet face to face,

---

[2] Sheriff Mellinger testified that when he received the October letter, Plato was set to be released from incarceration in less than two months.

on my very life, I'm going to knock your f*cking teeth so far down your throat, your [sic] going to have to stick your toothbrush up your *ss just to brush your teeth.

* * *

So, in closing, you only have days to set up a meeting and make things right Scott. I dont [sic] have one thing to loose [sic] or even care to live for and my record speaks for its self [sic]. I'm all in and it's your turn to deal.

*Id*. at 10-13 (underlining in original). Sheriff Mellinger also testified to receiving a third letter[3] after the October letter in which Plato used a different tone and apologized for writing the April and October letters.

[10] Plato did not present any evidence on his behalf but in cross-examining Sheriff Mellinger, suggested that he was merely exercising his First Amendment right to free speech to complain about police conduct. In closing, Plato argued to the court that his threats were "outrageous" and "totally implausible" and, as evidenced by his subsequent letter apologizing for writing the threatening letters, he did not have "any real intentions of carrying out any of those threats." *Transcript Vol. II* at 29.

---

[3] This letter was not admitted into evidence.

After considering the evidence and the parties' arguments, the court found that Plato violated the terms of his suspended sentence and ordered him to serve his entire four-year sentence in the DOC. Plato now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Sufficiency

Plato argues that the trial court erred in finding that he violated his probation. A probation revocation hearing is civil in nature, and the alleged violation must be proven by the State by a preponderance of the evidence. *Mateyko v. State*, 901 N.E.2d 554, 558 (Ind. Ct. App. 2009), *trans. denied*. When reviewing a claim of insufficient evidence to support a trial court's decision to revoke probation, we consider only the evidence most favorable to the judgment, and we neither reweigh the evidence nor judge the credibility of witnesses. *Id*. Revocation is appropriate if there is substantial evidence of probative value to support the trial court's conclusion that the probationer has violated the terms of probation. *Lightcap v. State*, 863 N.E.2d 907, 911 (Ind. Ct. App. 2007).

The underlying probation violations were that Plato had committed two criminal acts of intimidation—one against Detective Dwiggins and one against Sheriff Mellinger. To affirm the court's revocation of Plato's suspended sentence, the trial court need only have found by a preponderance of the evidence that Plato committed one act of intimidation. *See Luke v. State*, 51

N.E.3d 401, 421 (Ind. Ct. App. 2016) (noting a single violation of probation is sufficient to support revocation of probation).

[14] Plato asserts that the statements he made in his April and October letters were protected by the First Amendment and thus, not punishable as acts of intimidation. He maintains that he was expressing frustration over the loss of personal property and that his statements did not constitute a true threat in that they were not "a serious expression of intent to commit unlawful violence." *Appellant's Brief* at 7. He also asserts that to the extent his statements constituted threats, they were conditioned on his dispute over seized items not being resolved.

[15] As our Supreme Court has noted, "The United States and Indiana constitutions afford sweeping protections to speech about public officials or issues of public or general concern, even if the speech is intemperate or caustic. But there is no such protection for 'true threats'—including veiled or implied threats, when the totality of the circumstances shows that they were intended to put the victims in fear for their safety." *Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014). "True threats" of violence are provided no protection under the First Amendment and are unlawful under Ind. Code § 35-45-2-1(d). *Id*. at 963. A "true threat" is a "statement[] where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id*. (quoting *Virginia v. Black*, 538 U.S. 343, 365 (2003)).

[16] Indiana has implemented this authority by defining "threat" for purposes of intimidation, in pertinent part, as follows:

> (d) "Threat" means an expression, by words or action, of an intention to:
>
> > (1) unlawfully injure the person threatened or another person, or damage property;
>
> > * * *
>
> > (3) commit a crime.

I.C. § 35-45-2-1(d). "A person who communicates a threat with the intent . . . that another person be placed in fear of retaliation for a prior lawful act" commits intimidation as a Class A misdemeanor. I.C. § 35-45-2-1(a)(1). A threat is "communicated" by an individual when he or she "knows or has good reason to know the statement will reach the victim." *E.B. v. State*, 89 N.E.3d 1087, 1092 (Ind. Ct. App. 2017) (citing *Ajabu v. State*, 677 N.E.2d 1035, 1043 (Ind. Ct. App. 1997), *trans. denied*). "The 'intent' that matters is not whether the speaker really means to carry out the threat, but only whether he intends it to 'plac[e] the victim in fear of bodily harm or death.'" *Brewington*, 7 N.E.3d at 963 (citing *Black*, 538 U.S. at 359-60). In assessing intent, courts must look to the context surrounding the statement(s). *Id*.

[17] Prior to the letters at issue here, Plato had sent Sheriff Mellinger several other letters while he was incarcerated, the tone of which did not present any concern

to Sheriff Mellinger. Plato also filed a civil suit for the return of his property that was ultimately dismissed. After things did not go his way, Plato sent the April letter to Sheriff Mellinger. As set out above, Plato expressed his extreme displeasure with Sheriff Mellinger, Detective Dwiggins, and others with regard to their role in the seizure of some of his personal property, which he claims was beyond the scope of the search warrant. Plato stated that he "tried to deal with and handle this situation with a cool clear head but that isn't working." *State's Exhibits* at 3. He then warned that if he was not reimbursed for his "stolen" property, "a new arrangement [would] take effect." *Id*. at 4. He explained that if he was approached by an armed officer, he would treat such as an "act of aggression" and also detailed how he would shoot through the grill and engine block of each Madison County Sheriff's vehicle, "both marked and unmarked." *Id*. at 4-5. Following his signature, Plato included a postscript directed at Detective Dwiggins. He stated that the "very first time" he saw her after his release, he would "not treat her as a Detective of Madison County but as a thief," and that he would "beat the breaks off that b*tch." *Id*. at 6. He continued that it "don't matter where I ever see her, she will be beat like a thief." *Id*.

[18] In the October 10, 2019 letter, Plato again launched threats at Sheriff Mellinger and others. He stated that he was "sick and tired of going through the 'appropriate channels' and getting absof*ckinglutely nowhere." *State's Exhibits* at 7. He claimed that he had reached the highest level of "pisstivity" and that he found himself "within mere days" from his release and was going to return

with his "blood boiling." *Id*. Plato wrote that he could return to Anderson "in a state of peace or on a path of <u>total</u> <u>destruction</u> <u>and</u> <u>all</u> <u>out</u> <u>war</u>." *Id*. at 8. He warned that he had "the motive, the means, and the opportunity is just mere days away." *Id*. at 9-10. He then threatened physical harm to Sheriff Mellinger, stating, "I <u>promise</u> you that if we don't resolve this Scott, the very first time we meet face to face, <u>on</u> <u>my</u> <u>very</u> <u>life</u>, I'm going to knock your f*cking teeth so far down your throat, your [sic] going to have to stick your toothbrush up your *ss just to brush your teeth." *Id*. at 10. Plato followed this statement with, "I dont [sic] care if your [sic] with your family out eating a meal, you've got this coming." *Id*.

[19] The language Plato used in his letters, together with the context in which they were made, demonstrates that Plato intended for them to be true threats. Plato was angry that certain personal items had been seized and with the lack of what he believed to be an appropriate response to his demands. He described the situation as "volatile" and repeatedly expressed how he was done with being civil and ready to resort to violence, including specific threats to shoot at police cars, "beat the breaks off" of Detective Dwiggins, and knock Sheriff Mellinger's teeth out. *Id*. at 7, 6. *See also Fleming v. State*, 85 N.E.3d 626, 629 (Ind. Ct. App. 2017) (holding that a defendant's threat to "beat [someone's] ass" while angry showed that the defendant intended his communication to put his target in fear for his safety). Further, aside from directly threatening Sheriff Mellinger, Plato had good reason to know that his threats to physically harm Detective Dwiggins would be communicated to her.

[20] To the extent he claims his threats were conditioned on his dispute not being resolved, his argument fails. Plato's use of conditional language does not diminish the credibility of his threats. As we have before noted, "[t]hreats are, by definition, expressions of an intention to do a future thing, and, thus, to some degree, all threats are conditional." *Roar v. State*, 52 N.E.3d 940, 943 (Ind. Ct. App. 2016), *adopted in relevant part by Roar v. State*, 54 N.E.3d 1001, 1002 (Ind. 2016) (citing I.C. 35-45-2-1(d)). While conditional language of the threat may be considered as evidence of the defendant's intent, it is not dispositive. *Id*.

[21] Here, the alleged condition upon which Plato's threats were based was resolution of his dispute in his favor, including return of personal items he claims were seized outside the scope of a search warrant and a random demand for nearly two million dollars. Aside from the fact that it is unlikely that Plato's demands will be resolved to his satisfaction, it remains that his threats were more likely intended to place his victims in fear for a prior lawful act. The evidence establishes by a preponderance of the evidence that Plato committed, at the very least, one act of intimidation. A condition of Plato's suspended sentence was that he "[o]bey all municipal, state, and federal laws, and behave well in society." *Appellant's Appendix Vol. II* at 99. By writing letters threatening physical harm to Sheriff Mellinger and Detective Dwiggins, Plato clearly violated a condition of his suspended sentence. The evidence is sufficient to support he trial court's revocation of Plato's suspended sentence.

## 2. *Abuse of Discretion*

[22]     Plato also argues that the trial court's decision to revoke his four-year suspended sentence in F5-1294 was an abuse of discretion. We review a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion. *Jones v. State*, 838 N.E.2d 1146, 1148 (Ind. Ct. App. 2005). An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Moreover, "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed." *Id.* "If the court finds the defendant has violated a condition of his probation at any time before the termination of the probationary period, and the petition to revoke is filed within the probationary period, then the court may order execution of the sentence that had been suspended." *Gosha v. State*, 873 N.E.2d 660, 664 (Ind. Ct. App. 2007); *see also* Ind. Code § 35-38-2-3(h).

[23]     Plato threatened to physically harm Detective Dwiggins. When confronted and interviewed on May 1, 2019, Plato had the opportunity to recant his threats. Plato, however, repeated several times during the interview that he intended to beat up Detective Dwiggins. In fact, Plato "was very firm in his conviction about his desire to commit battery against Detective Dwiggins." *Appellant's Appendix Vol. II* at 110. After being charged with intimidation, Plato responded by writing the October letter, which was rife with derogatory comments, profanity, and threats of violence directed at Sheriff Mellinger and others. With

his threatening letters, Plato demonstrated that he is not a good candidate for probation. We cannot say that the trial court abused its discretion in revoking Plato's four-year suspended sentence.

[24]    Judgment affirmed.


Riley, J. and May, J., concur.